# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

Kevin V. Cook,

     Plaintiff,

v.

Wyeth LLC and Wyeth Pharmaceuticals, Inc.; Pfizer Inc.; Schwarz Pharma Inc. and Schwarz Pharma AG; UCB GmbH; Alaven Pharmaceutical, LLC.; Wockhardt USA; Morton Grove Pharmacetucials, Inc. and Baxter Healthcare Corporation; Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries, LTD.; Pliva, Inc. and Pliva D.D.; Barr Pharmaceuticals, LLC; Barr Laboratories, Inc.; Duramed Pharmaceuticals, Inc.; Qualitest Pharmaceuticals, Inc.; The Harvard Drug Group, LLC, Individually and D/B/A/ Major Pharmaceuticals, Inc.; Pharmaceuticals Associates, Inc.; Beach Products, Inc.; United Research Laboratories, Inc.; Mutual Pharmaceutical Company, Inc.; Silarx Pharmaceuticals, Inc.; Sandoz, Inc.; Anip Acquisition Company A/K/A Anip Pharmaceuticals A/K/A Ani Pharmaceuticals A/K/A A&I Pharmaceuticals; Watson Laboratories, Inc.; Rugby Pharmaceuticals, Inc. A/K/A Rugby Laboratories, Inc.; Actavis Elizabeth LLC, individually and D/B/A/ Purepac Pharmaceuticals; Actavis Group HF; APP Pharmaceuticals, LLC individually and D/B/A Abraxis Pharmaceuticals; Amneal Pharmaceuticals, LLC; Bedford Laboratories; Hospira Inc.; IPCA Pharmaceuticals, Inc.; McKesson Corporation, Individually and D/B/A/ Northstar RX LLC; Northstar LLC; Rugby Laboratories, Inc.; Norbrook Inc. USA; Smith & Nephew Inc.; Vistapharm, Inc.; Roxane Laboratories, Inc.; USL PHARMA, Inc.; PAR Pharmaceutical Inc.; Halsey Drug, LLC, individually and D/B/A Halsey Drug Co., Inc.; Superpharm, Inc.; Paco Pharmaceutical Services, Inc.; Vintage Pharmaceuticals LLC; Schering Corporation; Ranbaxy Pharmaceuticals, Inc; Ivax Pharmaceuticals, Inc.; First Data Bank Inc., a subsidiary of The Hearst Corporation,

     Defendants.

---

## COMPLAINT

---

Plaintiff Kevin V. Cook, by his undersigned attorneys, Franklin D. Azar & Associates submits the following Complaint against Defendants listed above and alleges upon information and belief as follows:

## I. PARTIES

1.      Plaintiff, Kevin V. Cook ("Plaintiff"), is an individual residing at 3849 East 135th Way Thonrton, Colorado 80241.

2.      Plaintiff brings this action in his own right for purposes of recovering all damages allowable by law for injuries suffered as a result of his ingestion of Reglan, Metoclopramide and/or Metoclopramide HCl (hereinafter "Reglan/ MCP").

3.      Defendant, Wyeth, Inc. d/b/a Wyeth is a Delaware corporation with a principal place of business at 5 Giralda Farms, Madison, New Jersey 07940 and regularly conducts business in Denver County, Colorado.

4.      Defendant, Wyeth Pharmaceuticals, Inc., has a principal place of business at 500 Arcola Road, Collegeville, Pennsylvania 19426 and regularly conducts business in Denver County.

5.      References in this Complaint to Defendant "Wyeth," shall include collectively Defendants, Wyeth, Inc. and Wyeth Pharmaceuticals, Inc. and shall also include individually and collectively all current and/or former divisions and/or subsidiaries, Wyeth as successor in interest to A.H. Robins, Inc., American Home Drugs Corporation, and ESI, Lederle, Inc.

6.      At all times material hereto, Defendant Wyeth was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties, as successor in interest, or other related entities Reglan/MCP in the state of Colorado and in interstate commerce.   Wyeth is subject to the

jurisdiction and venue of this Court. Wyeth may be served through its registered agent: Raymond Williams DLA Piper US LLP One Liberty Place 1650 Market Street, Suite 4900 Philadelphia, PA 19103.

7.      Based upon information and belief, Wyeth also manufactures and distributes generic Reglan/MCP through its ownership of ESI Lederle, Inc., ("ESI") a former subsidiary which merged into Wyeth and regularly conducts such business in the County of Denver, for which it derives significant and regular income. Wyeth Pharmaceuticals d/b/a ESI Lederle, Inc. may be served through its registered agent: Raymond Williams DLA Piper US LLP One Liberty Place 1650 Market Street, Suite 4900 Philadelphia, PA 19103.

8.      Defendant, Schwarz Pharma, Inc. and Schwarz Pharma AF, ("Schwarz") a manufacturer and distributor of Reglan/MCP, is a Delaware corporation, with its principal place of business in Mequon, Wisconsin, duly qualified to do business in the State of Colorado and may be served with process through its registered agent: Sharon Sandell of Mayer Brown LLP 1675 Broadway New York, NY 10019. References to Schwarz include Schwarz individually and collectively all of its predecessors in interest and divisions. Schwartz regularly conducts significant business in Denver County, Colorado.

9.      At all times material hereto, Defendant Schwarz was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado  and in interstate commerce. Schwarz is subject to the jurisdiction and venue of this Court.

10.     Defendant, Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries, LTD., ("Teva"), a manufacturer and distributor of generic Reglan/MCP, is a Delaware

corporation with its principal place of business at 1090 Horsham Road, North Wales, Pennsylvania. It is a wholly-owned subsidiary of Teva Pharmaceutical Industries Ltd., and has offices located at 650 Cahill Road, Sellersville, Pennsylvania 18960 and 1090 Horsham Road, North Wales, Pennsylvania 19454. Teva regularly conducts significant business in Denver County, Colorado. Teva may be served with process through its registered agent: Alexis Langella at Marks, O'Neill, O'Brien & Courtney, PC, 1800 John F. Kennedy Boulevard, Suite 1900 Philadelphia, PA 19103.

11.    At all times material hereto, Defendant Teva was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Teva is subject to the jurisdiction and venue of this Court.

12.    Defendants, Pliva, Inc. and Pliva D.D. ("Pliva") is a New York corporation with its principal place of business at 17 West Street, East Hanover, New Jersey 07936 and regularly conducts business in Denver County, Colorado. Pliva is a wholly-owned subsidiary of Pliva, d.d., which is a wholly-owned subsidiary of Barr Pharmaceuticals, Inc. Pliva may be served with process through its registered agent: Megan Grossman, Segal McCambridge Singer & Mahoney, Ltd., 1800 Market Street, Suite 2600 Philadelphia, PA 19103.

13.    Defendant, Barr Pharmaceuticals, Inc. (hereinafter "Barr"), is a Delaware corporation with its principal place of business at 400 Chestnut Ridge Road, Woodcliff Lake, New Jersey 07677. Barr is being sued herein as the owner of Pliva and may be served with process through its registered agent: Megan Grossman, Segal McCambridge Singer & Mahoney, Ltd., 1800 Market Street, Suite 2600 Philadelphia, PA 19103. Hereafter, Pliva and Barr will be collectively referred to as "Pliva."

14.     At all times material hereto, Pliva was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Pennsylvania and in interstate commerce. Pliva regularly conducts significant business in Denver County, Colorado. Pliva is subject to the jurisdiction and venue of this Court.

15.     Defendant, Barr Laboratories, Inc. (hereinafter "Barr Laboratories"), is a Delaware corporation with its principal place of business at 400 Chestnut Ridge Road, Woodcliff Lake, New Jersey 07677. Barr Laboratories is a wholly owned subsidiary of Barr Pharmaceuticals, Inc. and is being sued herein as the owner of Pliva and may be served with process through its registered agent: Megan Grossman, Segal McCambridge Singer & Mahoney, Ltd., 1800 Market Street, Suite 2600 Philadelphia, PA 19103. Hereafter, Pliva and Barr will be collectively referred to as "Pliva."

16.     At all times material hereto, Pliva was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Pennsylvania and in interstate commerce. Pliva regularly conducts significant business in Denver County, Colorado. Pliva is subject to the jurisdiction and venue of this Court.

17.     Upon information and belief, Defendant First DataBank, Inc., a subsidiary of The Hearst Corporation, ("FDB"), 1111 Bayhill Drive, San Bruno, California, 94066, is a Missouri corporation with its principal place of business in California. FDB regularly conducts significant business in Denver County, Colorado. FDB may be served with process through its registered agent: CT Corporation System, 818 W 7th Street, Los Angeles, CA 90017.

18.     At all times material hereto, written Reglan, Metoclopramide and/or Metoclopramide HCl drug package inserts, patient drug information forms, counseling, warnings, or literature, provided to Walgreens pharmacy and Kaiser Permanente pharmacy customers, including Plaintiff, by Walgreens and Kaiser Permanente pharmacies, were recklessly, improperly, and negligently created, written, edited, provided and made available to Walgreens and Kaiser Permanente pharmacies, by FDB, for purposes of providing same to Walgreens and Kaiser Permanente pharmacies' customers, including Plaintiff, and to others in the State of Colorado and in interstate commerce..

19.     As set forth below, FDB had, undertook, and failed in its duty to provide truthful, accurate, appropriate and complete information and warnings in the written Reglan, Metoclopramide and/or Metoclopramide HCl drug package inserts, patient drug information forms, counseling, warnings, or literature, that it created, wrote, edited, provided and made available to Walgreens and Kaiser Permanente pharmacies to be distributed to Walgreens and Kaiser Permanente pharmacies' customers, including Plaintiff.  FDB is subject to the jurisdiction and venue of this Court.

20.     Defendant, Alaven Pharmaceutical, LLC., (hereinafter "Alaven"), is a Georgia corporation with its principal place of business at 200 North Cobb Parkway, Bldg. 400, Suite 428 Marietta, GA 30062.   Alaven regularly conducts significant business in Denver County, Colorado.  Alaven may be served with process through its registered agent: Henninger S. Brown, Esq., Mayer Brown, LLP, 1675 Broadway, New York, New York 10019.

21.     At all times material hereto, Alaven was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of

Colorado and in interstate commerce. Alaven regularly conducts significant business in Denver County, Colorado. Alaven is subject to the jurisdiction and venue of this Court.

22.     Defendant, Wockhardt USA, (hereinafter "Wockhardt"), is a New Jersey corporation with its principal place of business at 20 Waterview Blvd., 3rd Floor Parsippany, NJ 07054. Upon information and belief, Wockhardt USA is a wholly owned subsidiary Wockhardt USA LLC. Wockhardt regularly conducts significant business in Denver County, Colorado. Wockhardt may be served with process through its registered agent: Robert O'Malley, Esq., Segal, McCambridge, Singer & Mahoney, LTD, 233 S. Wacker Drive Sears Tower- Suite 5500 Chicago, IL 60606.

23.     At all times material hereto, Wockhardt was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Wockhardt regularly conducts significant business in Denver County, Colorado. Wockhardt is subject to the jurisdiction and venue of this Court.

24.     Defendant, Actavis Elizabeth LLC, individually and D/B/A/ Purepac Pharmaceuticals; Actavis Group HF, (hereinafter "Actavis Elizabeth"), is a New Jersey corporation with its principal place of business at 60 Columbia Rd, Building B Morristown, NJ 07960. Actavis Elizabeth regularly conducts significant business in Denver County, Colorado. Actavis Elizabeth may be served with process through its registered agent: Walter "Pete" Swayze, III, Esq., Segal, McCambridge, Singer & Mahoney, LTD, 30 South 17th Street, Suite 1700 Philadelphia, PA 19103.

25.     At all times material hereto, Actavis Elizabeth was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling,

either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Actavis Elizabeth regularly conducts significant business in Denver County, Colorado. Actavis Elizabeth is subject to the jurisdiction and venue of this Court.

26.     Defendant, Qualitest Pharmaceuticals, Inc., (hereinafter "Qualitest"), is an Alabama corporation with its principal place of business at 130 Vintage Drive Huntsville, AL 35811. Qualitest regularly conducts significant business in Denver County, Colorado. Qualitest may be served with process through its registered agent: John Mullen, Esq., Nelson Levine de Luca & Horst, LLC, 518 Township Line Road, Suite 300 Blue Bell, PA 19422.

27.     At all times material hereto, Qualitest was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Qualitest regularly conducts significant business in Denver County, Colorado. Qualitest is subject to the jurisdiction and venue of this Court.

28.     Defendant, The Harvard Drug Group, LLC, Individually and D/B/A/ Major Pharmaceuticals, Inc., (hereinafter "Harvard Drug Group"), is a Michigan corporation with its principal place of business at 31778 Enterprise Dr Livonia, MI 48150. Harvard Drug Group regularly conducts significant business in Denver County, Colorado. Harvard Drug Group may be served with process through its registered agent: C. David Miller, Esq., Garan Lucow Miller, P.C., 1000 Woodbridge Street Detroit, MI 48207-3192.

29.     At all times material hereto, Harvard Drug Group was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of

Colorado and in interstate commerce. Harvard Drug Group regularly conducts significant business in Denver County, Colorado. Harvard Drug Group is subject to the jurisdiction and venue of this Court.

30.     Defendant, Pharmaceutical Associates, Inc., (hereinafter "Pharmaceutical Associates"), is a Michigan corporation with its principal place of business at 31778 Enterprise Dr Livonia, MI 48150. Pharmaceutical Associates regularly conducts significant business in Denver County, Colorado. Pharmaceutical Associates may be served with process through its registered agent: Daniel McCarthy, Esq., Mintzer Sarowitz Zeris Ledva & Myers, LLP, 1500 Market Street, Suite 1400 Philadelphia, PA 19102.

31.     At all times material hereto, Pharmaceutical Associates was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Pharmaceutical Associates regularly conducts significant business in Denver County, Colorado. Pharmaceutical Associates is subject to the jurisdiction and venue of this Court.

32.     Defendant, URL Pharma, Inc., (hereinafter "URL Pharma"), is a Minnesota corporation with its principal place of business at 1100 Orthodox Street Philadelphia, PA 19124. URL Pharma regularly conducts significant business in Denver County, Colorado. URL Pharma may be served with process through its registered agent: Geoffrey Coan, Esq. and Kathleen Kelly, Esq., Wilson Elser, 260 Franklin Street, 14th Floor Boston, MA 02110.

33.     At all times material hereto, URL Pharma was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of

Colorado and in interstate commerce.  URL Pharma regularly conducts significant business in Denver County, Colorado.  URL Pharma is subject to the jurisdiction and venue of this Court.

34.     Defendant, Mutual Pharmaceutical Company, Inc., (hereinafter "Mutual Pharmaceutical"), is a Philadelphia corporation with its principal place of business at 1100 Orthodox Street Philadelphia, PA 19124-3168.  Mutual Pharmaceutical regularly conducts significant business in Denver County, Colorado.  Mutual Pharmaceutical may be served with process through its registered agent: Geoffrey Coan, Esq. and Kathleen Kelly, Esq., Wilson Elser, 260 Franklin Street, 14th Floor Boston, MA 02110.

35.     At all times material hereto, Mutual Pharmaceutical was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce.  Mutual Pharmaceutical regularly conducts significant business in Denver County, Colorado.  Mutual Pharmaceutical is subject to the jurisdiction and venue of this Court.

36.     Defendant, Anip Acquisition Company A/K/A Anip Pharmaceuticals A/K/A Ani Pharmaceuticals A/K/A A&I Pharmaceuticals, (hereinafter "Anip"), is a Philadelphia corporation with its principal place of business at 3600 25th Avenue Gulfport, MS 39501. Anip regularly conducts significant business in Denver County, Colorado.  Anip may be served with process through its registered agent: Philip D. Priore, Esq. and Stephen M. McManus, Esq., McCormick & Priore, P.C., 4 Penn Center, Suite 800 1600 John F. Kennedy Boulevard Philadelphia, PA 19103.

37.     At all times material hereto, Anip was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either

directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Anip regularly conducts significant business in Denver County, Colorado.  Anip is subject to the jurisdiction and venue of this Court.

38.     Defendant, USL Pharma, Inc., (hereinafter "USL Pharma"), is a Minnesota corporation with its principal place of business at 6701 Evenstad Drive, Maple Grove, MN 55369-4709. USL Pharma regularly conducts significant business in Denver County, Colorado. USL Pharma may be served with process through its registered agent: CT Corp System, 1675 Broadway Ste 1200, Denver, CO 80202.

39.     At all times material hereto, USL Pharma was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. USL Pharma regularly conducts significant business in Denver County, Colorado.  USL Pharma is subject to the jurisdiction and venue of this Court.

40.     Defendant, United Research Laboratories, Inc., (hereinafter "URL"), is a Minnesota corporation with its principal place of business at 1100 Orthodox Street Philadelphia, PA 19124. URL regularly conducts significant business in Denver County, Colorado.  URL may be served with process through its registered agent: Kathleen Kelly, Esq., Hinshaw & Culbertson LLP, One International Place, 3rd Floor Fort Hill Square Boston, MA 02110.

41.     At all times material hereto, URL was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. URL regularly conducts significant business in Denver County, Colorado.  URL is subject to the jurisdiction and venue of this Court.

42.     Defendant, Pfizer, Inc., (hereinafter "Pfizer"), is a New York corporation with its principal place of business at 150 East 42nd Street, 38th Floor, New York, NY 10017. Pfizer regularly conducts significant business in Denver County, Colorado.  Pfizer may be served with process through its registered agent: The Corporation Company 1675 Broadway Ste 1200, Denver, CO 80202.

43.     At all times material hereto, Pfizer was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Pfizer regularly conducts significant business in Denver County, Colorado.  Pfizer is subject to the jurisdiction and venue of this Court.

44.     Defendant, Morton Grove Pharmaceuticals, Inc., (hereinafter "Morton Grove"), is an Illinois corporation with its principal place of business at 6541 Main Street Morton grove, IL 60053. Morton Grove regularly conducts significant business in Denver County, Colorado. Morton Grove may be served with process through its registered agent: Robert O' Malley Segal McCambridge Singer & Mahoney, Ltd 233 South Wacker Drive, Suite 5500 Chicago, IL 60606.

45.     At all times material hereto, Morton Grove was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Morton Grove regularly conducts significant business in Denver County, Colorado.  Morton Grove is subject to the jurisdiction and venue of this Court.

46.     Defendant, Baxter Healthcare Corporation, Inc., (hereinafter "Baxter"), is an Illinois corporation with its principal place of business at One Baxter Parkway Deerfield, IL 60015-4625. Baxter regularly conducts significant business in Denver County, Colorado.  Baxter

may be served with process through its registered agent: Will Sachse, Dechert LLP, Ciara Centre 2929 Arch Street Philadelphia, PA 19104.

47.     At all times material hereto, Baxter was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Baxter regularly conducts significant business in Denver County, Colorado.  Baxter is subject to the jurisdiction and venue of this Court.

48.     Defendant, Duramed Pharmaceuticals, Inc., (hereinafter "Duramed"), is an Ohio corporation with its principal place of business at 5040 Duramed Drive Cincinnati, OH 45213. Duramed regularly conducts significant business in Denver County, Colorado.  Duramed may be served with process through its registered agent: Megan Grossman, Segal McCambridge Singer & Mahoney, Ltd., 1800 Market Street, Suite 2600 Philadelphia, PA 19103.

49.     At all times material hereto, Duramed was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Duramed regularly conducts significant business in Denver County, Colorado.  Duramed is subject to the jurisdiction and venue of this Court.

50.     Defendant, Beach Products, Inc., (hereinafter "Beach Products"), is a Florida corporation with its principal place of business at 5220 S Manhattan Avenue Tampa, FL 33611-3420. Beach Products regularly conducts significant business in Denver County, Colorado. Beach Products may be served with process through its registered agent: Richard Jenkins 4617 Bayshore Blvd Tampa, FL 33611.

51.     At all times material hereto, Beach Products was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Beach Products regularly conducts significant business in Denver County, Colorado.  Beach Products is subject to the jurisdiction and venue of this Court.

52.     Defendant, Watson Laboratories, Inc., (hereinafter "Watson"), is a California corporation with its principal place of business at 311 Bonnie Circle Corona, California 92880. Watson regularly conducts significant business in Denver County, Colorado.  Watson may be served with process through its registered agent: Gregory Thomas and LeClair Ryan One Riverfront Plaza 1037 Raymond Boulevard, 16th Floor Newark, NJ 07102.

53.     At all times material hereto, Watson was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Watson regularly conducts significant business in Denver County, Colorado.  Watson is subject to the jurisdiction and venue of this Court.

54.     Defendant, Rugby Pharmaceuticals, Inc. A/K/A Rugby Laboratories, Inc., (hereinafter "Rugby"), upon information and belief is a wholly-owned subsidiary of Watson Laboratories, Inc. Rugby is a Georgia corporation with its principal place of business at 1810 Peachtree Industrial Boulevard, Suite 250 Duluth, Georgia 30097. Rugby regularly conducts significant business in Denver County, Colorado.  Rugby may be served with process through its registered agent: Gregory Thomas and LeClair Ryan One Riverfront Plaza 1037 Raymond Boulevard, 16th Floor Newark, NJ 07102.

55.     At all times material hereto, Rugby was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Rugby regularly conducts significant business in Denver County, Colorado.  Rugby is subject to the jurisdiction and venue of this Court.

56.     Defendant, APP Pharmaceuticals, LLC individually and D/B/A Abraxis Pharmaceuticals, Inc., (hereinafter "Abraxis"), is an Illinois corporation with its principal place of business at 1501 East Woodfield Road Suite 300 East Schaumburg, Illinois 60173. Abraxis regularly conducts significant business in Denver County, Colorado.  Abraxis may be served with process through its registered agent: Erin M. Bosman Morrison & Forrester LLP 12531 High Bluff Drive, Suite 100 San Diego, CA 92130.

57.     At all times material hereto, Abraxis was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Abraxis regularly conducts significant business in Denver County, Colorado.  Abraxis is subject to the jurisdiction and venue of this Court.

58.     Defendant, Amneal Pharmaceuticals, LLC, (hereinafter "Amneal"), is an Illinois corporation with its principal place of business at 1501 East Woodfield Road Suite 300 East Schaumburg, Illinois 60173. Amneal regularly conducts significant business in Denver County, Colorado.  Amneal may be served with process through its registered agent: Martin Saad Venable LLP, 575 7th Street, NW Washington, DC 20004.

59.     At all times material hereto, Amneal was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either

directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Amneal regularly conducts significant business in Denver County, Colorado. Amneal is subject to the jurisdiction and venue of this Court.

60.    Defendant, Bedford Laboratories, (hereinafter "Bedford"), is an Illinois corporation with its principal place of business at 1501 East Woodfield Road Suite 300 East Schaumburg, Illinois 60173. Bedford regularly conducts significant business in Denver County, Colorado. Bedford may be served with process through its registered agent: Tia Trout-Perez, Kirkland & Ellis LLP 655 Fifteenth Street, N.W. Washington, DC 20005.

61.    At all times material hereto, Bedford was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Bedford regularly conducts significant business in Denver County, Colorado. Bedford is subject to the jurisdiction and venue of this Court.

62.    Defendant, Hospira Inc., (hereinafter "Hospira"), is an Illinois corporation with its principal place of business at 275 North Field Drive, Lake Forest, Illinois 60045. Hospira regularly conducts significant business in Denver County, Colorado. Hospira may be served with process through its registered agent: Albert Piccerilli Montgomery, McCracken, Walker & Rhodes, LLC 123 South Broad Street Avenue of the Arts Philadelphia, PA 19109.

63.    At all times material hereto, Hospira was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Hospira regularly conducts significant business in Denver County, Colorado. Hospira is subject to the jurisdiction and venue of this Court.

64.    Defendant, IPCA Pharmaceuticals Inc., (hereinafter "IPCA"), is an Illinois corporation with its principal place of business at 51 Cragwood Road, Suite 203, South Plainfield, NJ 07080. IPCA regularly conducts significant business in Denver County, Colorado. IPCA may be served with process through its registered agent: Gregory Thomas and LeClair Ryan One Riverfront Plaza 1037 Raymond Boulevard, 16th Floor Newark, NJ 07102.

65.    At all times material hereto, IPCA was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. IPCA regularly conducts significant business in Denver County, Colorado.  IPCA is subject to the jurisdiction and venue of this Court.

66.    Defendant, McKesson Corporation, Individually and D/B/A/ Northstar RX LLC, (hereinafter "McKesson"), is an California corporation with its principal place of business at One Post Street San Francisco, CA 94104. McKesson regularly conducts significant business in Denver County, Colorado.  McKesson may be served with process through its registered agent: Melissa Graff, Drinker & Biddle One Logan Square, Suite 2000 Philadelphia, PA 19103.

67.    At all times material hereto, McKesson was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. McKesson regularly conducts significant business in Denver County, Colorado.  McKesson is subject to the jurisdiction and venue of this Court.

68.    Defendant, Northstar Rx LLC, (hereinafter "Northstar"), is a Tennessee corporation with its principal place of business at 4971 Southridge Blvd. Suite 101 Memphis, TN 38141. Northstar regularly conducts significant business in Denver County, Colorado.  Northstar

may be served with process through its registered agent: Melissa Graff, Drinker & Biddle One Logan Square, Suite 2000 Philadelphia, PA 19103.

69.   At all times material hereto, Northstar was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Northstar regularly conducts significant business in Denver County, Colorado.  Northstar is subject to the jurisdiction and venue of this Court.

70.   Defendant, Norbrook Inc. USA, (hereinafter "Norbrook"), is a Kansas corporation with its principal place of business at 9733 Loiret Blvd, Lenexa, Kansas 66219. Norbrook regularly conducts significant business in Denver County, Colorado.  Norbrook may be served with process through its registered agent: Corporate Agents, Inc. 2711 Centerville Road Suite 400 Wilmington, DE 19808.

71.   At all times material hereto, Norbrook was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Norbrook regularly conducts significant business in Denver County, Colorado.  Norbrook is subject to the jurisdiction and venue of this Court.

72.   Defendant, Smith & Nephew, Inc., (hereinafter "Smith & Nephew"), is a London based corporation with its principal place of business at 15 Adam Street London WC2N 6LA UK. Smith & Nephew regularly conducts significant business in Denver County, Colorado. Smith & Nephew may be served with process through its registered agent: Alexis Langella at Marks, O'Neill, O'Brien & Courtney, PC, 1800 John F. Kennedy Boulevard, Suite 1900 Philadelphia, PA 19103.

73.     At all times material hereto, Smith & Nephew was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Smith & Nephew regularly conducts significant business in Denver County, Colorado.  Smith & Nephew is subject to the jurisdiction and venue of this Court.

74.     Defendant, Vistapharm Inc., (hereinafter "Vistapharm"), is an Alabama corporation with its principal place of business at 2224 Cahaba Valley Dr # B3, Birmingham, AL 35242-2669. Vistapharm regularly conducts significant business in Denver County, Colorado. Vistapharm may be served with process through its registered agent: Julia Rafferty of Stradley Ronan 2005 Market Street, Suite 2600 Philadelphia, PA 19103.

75.     At all times material hereto, Vistapharm was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Vistapharm regularly conducts significant business in Denver County, Colorado.  Vistapharm is subject to the jurisdiction and venue of this Court.

76.     Defendant, Roxane Laboratories Inc., (hereinafter "Roxane"), is an Ohio corporation with its principal place of business at P.O. Box 16532  Columbus, OH 43216. Roxane regularly conducts significant business in Denver County, Colorado.  Roxane may be served with process through its registered agent: Tia Trout-Perez, Kirkland & Ellis LLP 655 Fifteenth Street, N.W. Washington, DC 20005.

77.     At all times material hereto, Roxane was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either

directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Roxane regularly conducts significant business in Denver County, Colorado. Roxane is subject to the jurisdiction and venue of this Court.

78.     Defendant, PAR Pharmaceuticals Inc., (hereinafter "PAR"), is a New York corporation with its principal place of business at One Ram Road Spring Valley, NY 19077. PAR regularly conducts significant business in Denver County, Colorado. PAR may be served with process through its registered agent: Megan Grossman, Segal McCambridge Singer & Mahoney, Ltd., 1800 Market Street, Suite 2600 Philadelphia, PA 19103.

79.     At all times material hereto, PAR was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. PAR regularly conducts significant business in Denver County, Colorado. PAR is subject to the jurisdiction and venue of this Court.

80.     Defendant, Halsey Drug, LLC, individually and D/B/A Halsey Drug Co., (hereinafter "Halsey"), is an Illinois corporation with its principal place of business at 695 North Perryville Road Rockford, IL 61107. Halsey regularly conducts significant business in Denver County, Colorado. Halsey may be served with process through its registered agent: C T Corporation System 208 South LaSalle Street, Suite 814 Chicago, IL 60604.

81.     At all times material hereto, Halsey was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Halsey regularly conducts significant business in Denver County, Colorado. Halsey is subject to the jurisdiction and venue of this Court.

82.     Defendant, SuperPharm Inc., (hereinafter "SuperPharm"), is an Illinois corporation with its principal place of business at 155 Oval Drive, Central Islip, NY 11722. SuperPharm regularly conducts significant business in Denver County, Colorado. SuperPharm may be served with process through its registered agent.

83.     At all times material hereto, SuperPharm was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. SuperPharm regularly conducts significant business in Denver County, Colorado. SuperPharm is subject to the jurisdiction and venue of this Court.

84.     Defendant, Paco Pharmaceutical Services Inc., (hereinafter "Paco"), is a New Jersey corporation with its principal place of business at 1200 Paco Way Lakewood, NJ 08701. Paco regularly conducts significant business in Denver County, Colorado. Paco may be served with process through its registered agent: The Prentice-Hall Corporation System, Inc. 2711 Centerville Road Suite 400 Wilmington, DE 19808.

85.     At all times material hereto, Paco was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Paco regularly conducts significant business in Denver County, Colorado. Paco is subject to the jurisdiction and venue of this Court.

86.     Defendant, Vintage Pharmaceuticals LLC, (hereinafter "Vintage"), is a New Jersey corporation with its principal place of business at 1200 Paco Way Lakewood, NJ 08701. Vintage regularly conducts significant business in Denver County, Colorado. Vintage may be

served with process through its registered agent:  Paulyne Gardner-Smith of Nelson Levine de Luca & Horst, LLC 518 Township Line Road, Suite 300 Blue Bell, PA 19422.

87.    At all times material hereto, Vintage was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Vintage regularly conducts significant business in Denver County, Colorado.  Vintage is subject to the jurisdiction and venue of this Court.

88.    Defendant, Schering Corporation, (hereinafter "Schering"), is a New Jersey corporation with its principal place of business at Galloping Hill Road Kenilworth, NJ 07033. Schering regularly conducts significant business in Denver County, Colorado.  Schering may be served with process through its registered agent: Michael King of Reed Smith LLP 2500 One Liberty Place 1650 Market Street Philadelphia, PA 19103.

89.    At all times material hereto, Schering was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Schering regularly conducts significant business in Denver County, Colorado.  Schering is subject to the jurisdiction and venue of this Court.

90.    Defendant, Ranbaxy Pharmaceuticals, Inc., (hereinafter "Ranbaxy"), is a California corporation with its principal place of business at 600 College Road East, Suite 2100 Princeton, NJ 08540. Ranbaxy regularly conducts significant business in Denver County, Colorado.  Ranbaxy may be served with process through its registered agent: Gregory Thomas and LeClair Ryan One Riverfront Plaza 1037 Raymond Boulevard, 16th Floor Newark, NJ 07102.

91.     At all times material hereto, Ranbaxy was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Ranbaxy regularly conducts significant business in Denver County, Colorado.  Ranbaxy is subject to the jurisdiction and venue of this Court.

92.     Defendant, Ivax Pharmaceuticals, Inc., (hereinafter "Ivax"), is a Florida corporation with its principal place of business at 4400 Biscayne Blvd. Miami, FL 33137. Ivax regularly conducts significant business in Denver County, Colorado.  Ivax may be served with process through its registered agent: Alexis Langella at Marks, O'Neill, O'Brien & Courtney, PC, 1800 John F. Kennedy Boulevard, Suite 1900 Philadelphia, PA 19103.

93.     At all times material hereto, Ivax was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Ivax regularly conducts significant business in Denver County, Colorado.  Ivax is subject to the jurisdiction and venue of this Court.

94.     Defendant, Silarx Pharmaceuticals, Inc., (hereinafter "Silarx"), is a New York corporation with its principal place of business at 19 West Street Spring Valley, NY 10977. Silarx regularly conducts significant business in Denver County, Colorado.  Silarx may be served with process through its registered agent: Rohit Desai 19 West St Spring Valley, New York, 10977.

95.     At all times material hereto, Silarx was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of

Colorado and in interstate commerce. Silarx regularly conducts significant business in Denver County, Colorado. Silarx is subject to the jurisdiction and venue of this Court.

96.     Defendant, Sandoz, Inc., (hereinafter "Sandoz"), is a New Jersey corporation with its principal place of business at 506 Carnegie Center Drive, Suite 400 Princeton, NJ 08540. Sandoz regularly conducts significant business in Denver County, Colorado. Sandoz may be served with process through its registered agent: Megan Kinsey-Smith of McKenna Long & Aldridge LLP 1900 K Street NW Washington, DC 20006.

97.     At all times material hereto, Sandoz was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/MCP in the State of Colorado and in interstate commerce. Sandoz regularly conducts significant business in Denver County, Colorado. Sandoz is subject to the jurisdiction and venue of this Court.

98.     All Defendants, identified supra, inclusive, and each of them, may be referred to in this Complaint collectively as the "Defendants."

99.     At all times relevant hereto, the Defendants were in the regular business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, branded and or generic Reglan /Metoclopramide, directly or indirectly, through third parties, as successor in interest, or other related entities, for which they each derived significant and regular income.

100.    At all times relevant hereto, FDB was engaged in the regular business of providing patient drug information for branded and or generic Reglan/MCP, directly or indirectly, through third parties, as successor in interest, or other related entities, in the State of

Pennsylvania and in the County of Philadelphia, for which it each derived significant and regular income.

101.    At all times relevant hereto, the Corporate Defendants were acting by and through their agents, servants and/or employees, each of whom were acting within the scope and course of their employment by agency or authority on their behalf.

## II.  VENUE AND JURISDICTION

102.    Plaintiff specifically incorporates by reference all of the above paragraphs verbatim.

103.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 and 1441, as this is a civil action involving citizens of different states and the amount in controversy exceeds $75,000. None of the listed Defendants are headquartered in the state of Colorado.

104.    Plaintiff has timely filed this lawsuit within two years of discovering the cause of action as defined and required by Colo. Rev. Stat. Section 13-80-106 (2005).

## III.    ALLEGATIONS COMMON TO ALL COUNTS

### A.    REGLAN/METOCLOPRAMIDE BACKGROUND

105.    Reglan, Metoclopramide and/or Metoclopramide HCl (hereinafter referred to as "Reglan/MCP") is a prescription medication classified as a GI stimulant, anti-emetic and dopaminergic blocking agent. It is indicated for short-term therapy for symptomatic gastroesophageal reflux and acute and recurrent diabetic gastric stasis.

106.    The active ingredient, Metoclopramide and Metoclopramide HCl, is a dopamine receptor blocking drug.  As Metoclopramide blocks dopamine transfer in the brain, it causes the brain to react and to produce more dopamine receptors so that areas controlling movement become hypersensitive to dopamine, in effect to overreact.

107.     Reglan/MCP is indicated for treatment use of <u>no greater than twelve (12) weeks</u>; however, Defendants represented that Reglan/MCP was safe for use to treat nausea and or esophageal reflux for durations that exceeded twelve (12) weeks.

108.     Patients who use Reglan/MCP for long periods (exceeding twelve weeks) are at a significant and unreasonably dangerous increased risk of developing a severe and permanent neurological movement disorders, including depression and those known as dyskinesia and/or dystonia.

109.     Other serious side effects that may be caused by ingesting Reglan/MCP for longer periods of time include, but are not limited to, central nervous system disorders, depression with suicidal ideation, anxiety, akathisia, visual disturbances and interference with drug metabolism.

110.     Patients who use Reglan/MCP for long periods (greater than 12 weeks) who are not able to effectively metabolize it are at a greater risk of developing these serious and permanent injuries.

111.     Tardive dyskinesia and dystonia are serious side effects associated with the ingestion of Reglan/MCP and are debilitating neurological disorders that often result in involuntary and uncontrollable movements of the head, neck, arms, legs and/or trunk, as well as involuntary facial grimacing and tongue movements, including tongue thrusting, tongue chewing, lip smacking, lip biting, cheek biting, eye blinking and/or other involuntary movements.

112.     There is no known cure for depression, tardive dyskinesia, dystonia or akathisia.

**B.     PLAINTIFF KEVIN V. COOK DEVELOPED DEPRESSION AND ABNORMAL MOVEMENTS AFTER INGESTING REGLAN/METOCLOPRAMIDE**

113.    Plaintiff brings this action for the purpose of recovering damages for the personal injuries he has suffered as a result of being prescribed and ingesting Reglan/MCP.

114.    Upon information and belief, in 1999 Plaintiff Cook's physician, initially prescribed Reglan/MCP for Plaintiff. In October 2006, Dr. James Hardee prescribed MCP for Plaintiff at a dosage of 10mg four times daily and at bedtime to treat gastroparesis.  Plaintiff ingested Reglan/MCP until approximately June 2009.

115.    Upon information and belief, in prescribing the Reglan/MCP to Plaintiff long-term, the prescribing physicians relied upon information published in the package inserts and/or the Physicians' Desk Reference (hereinafter referred to as "PDR") or otherwise disseminated by the Reference Listed Drug Company (hereinafter referred to as "RLD") and/or the New Drug Application Holder (hereinafter referred to as "NDA Holder").

116.    Plaintiff Cook ingested the Reglan/MCP as prescribed.  Plaintiff Cook also used the pharmaceutical drugs Reglan/MCP without substantial change in the condition of the drugs between the time of design and manufacture of the drugs and the time he used the drugs as directed.

117.    Plaintiff Cook's long-term ingestion of the Reglan/MCP caused his injuries.

118.    The Reglan/MCP ingested by Plaintiff Cook was manufactured, marketed and distributed by one or more of the Manufacturing Defendants in this cause of action.

119.    Plaintiff Cook was not aware of information different from or contrary to the inaccurate, misleading, materially incomplete, false and/or otherwise inadequate information disseminated in the PDR, RLD, by the NDA Holders or in the Patient Education Monograph authored by First Data Bank.

120.    During the time of his ingestion of Reglan/MCP, Plaintiff Cook remained at all times unaware of the potential risks, side effects and/or relationship between the continued ingestion of Reglan/MCP as prescribed and the physical symptoms, depression and anxiety that he was developing.  Upon information and belief, on or about June, 2009 Plaintiff Cook began to experience abnormal movements of his forehead, mouth, lips and jaw, difficulty opening his hands, as well as symptoms of depression and anxiety.  These symptoms worsened, and as a result, Plaintiff Cook sought treatment from his primary care physician, Dr. Hardee.

121.    Dr. Hardee examined Mr. Cook on several occasions and diagnosed him with depression.  Upon information and belief, Mr. Cook also complained of pain in his hands and joints as well as abnormal movements of his mouth and jaw.

122.    Presently, there is no cure for the depression from which Plainitff Cook suffers. Plaintiff Cook continues to suffer from depression, pain in his hands and joints as well as abnormal movements of his mouth and jaw.

123.    Upon information and belief, Plaintiff Cook's diagnosed depression, caused by the ingestion of Reglan/MCP, as well as his hand and joint pain and abnormal movements of his mouth and jaw are permanent.

124.    Plaintiff may also be suffering from additional injuries related to his Reglan use. "Metoclopramide itself…may suppress (or partially suppress) the signs of tardive dyskinesia, thereby masking the underlying disease process." Brief of Petitioner at 21-22, *Pliva, et al. v. Mensing*, Supreme Court No. 09-993 vide 09-1039, (citing *FDA Drug Review: Postapproval Risks* 1976-1985 at 111 (April 1990)).

125.   Upon information and belief, prior to ingesting Reglan/MCP, Plaintiff Cook never experienced depression, pain in his hands and joints or abnormal movements of his mouth and jaw, which he developed after ingesting Reglan/MCP.

126.   Plaintiff Cook's ingestion of Reglan/MCP, as prescribed, resulted in unnecessary and unreasonably dangerous overexposure to the drug causing him to suffer serious, permanent and disabling injuries, including but not limited to, injuries of, or believed to be associated with, the central nervous and extrapyramidal motor systems, specifically symptoms of tardive dyskinesia, a severe and often permanent, painful, disfiguring and debilitating neurological movement disorder, as well as depression and anxiety, debilitating mental illnesses.

127.   At no time, prior to July 2007 was Plaintiff Cook  knowledgeable or informed of the dangerous side effects associated with prolonged exposure to Reglan/MCP.

128.   Had Plaintiff Cook known of the risks associated with long-term ingestion of Reglan/MCP he would not have taken the drug.

129.   Recognizing the inadequate nature of the Defendants' label and warnings, in February 2009 the United States Food and Drug Administration (hereinafter referred to as "FDA") issued an advisory requiring the addition of a **Boxed Warning** for Reglan/MCP.  This new warning, appearing at the top of the label, states that "Chronic treatment with Metoclopramide can cause tardive dyskinesia, a serious movement disorder that is often irreversible . . . ."  Additionally, the new Boxed Warning now tells physicians and patients that "Prolonged treatment (greater than 12 weeks) with Metoclopramide should be avoided in all but rare cases . . . ."

130.   Finally, the FDA is now requiring that manufacturers/Defendants implement a Risk Evaluation and Mitigation Strategy because the FDA has determined that the use of

Reglan/MCP "pose[s] a serious and significant public health concern requiring the distribution of a Medication Guide." This Medication Guide, setting out all the risks of the drug and to be given to all users "is necessary for the patients' safe use of Reglan (Metoclopramide) . . . ." Unfortunately, neither this Boxed Warning nor the Medication Guide was available to Plaintiff or his physicians from March, 2000 to February, 2009 when Plaintiff Cook ingested Reglan/MCP.

131.    Plaintiff Cook's serious and permanent injuries, as described above and hereinafter, came about as a foreseeable and proximate result of Defendants' dissemination of inaccurate, misleading, materially incomplete, false and otherwise inadequate information concerning the potential effects of exposure to and long-term ingestion of Reglan/MCP to the medical community, Plaintiff, and other foreseeable users of the drug.

132.    Plaintiff Cook has experienced and will continue to experience medical and related expenses, loss of ability to provide household services and earning capacity, disfigurement, disability, pain, suffering, diminished quality of life, psychological injury and other injuries and damages due to the prescription and ingestion of Reglan/MCP.

## C.    CORPORATE DEFENDANTS' WRONGFUL CONDUCT

133.    This case involves Defendants' failure to warn doctors and patients of information within their knowledge or possession which indicated that Reglan/MCP, when taken for long periods of time, caused serious, permanent and debilitating side effects, including the injuries suffered by the Plaintiff.

134.    Defendants jointly and severally marketed, manufactured and distributed Reglan/MCP and encouraged the long term use of these drugs, misrepresented the effectiveness of these drugs and concealed the drug's dangerous side effects.

135.    Wyeth is the successor-in-interest to A.H. Robins Company, Inc., which first obtained approval by the United States Food and Drug Administration (hereinafter referred to as "FDA") to distribute Metoclopramide, under the brand name "Reglan" under the FDA's New Drug Application (NDA)[1] schema in 1983.

136.    Defendant Wyeth's predecessor in interest, A.H. Robins Company, Inc. expressly warranted to physicians that Reglan/MCP is safe for long-term use.

137.    A.H. Robins knew that its warranties regarding safety for long-term use would be relied upon by ordinary, reasonable and prudent physicians who would share that information with other physicians in their communities and that eventually physicians would come to rely on A.H. Robins' express warranties about Reglan/MCP's safety for long-term use.

138.    A.H. Robins' express warranties about the safety of Reglan/MCP for long-term use were false and intentionally and negligently misleading.

139.    As successor-in-interest to A.H. Robins Company, Inc., Wyeth is legally responsible for the conduct, fraudulent and negligent acts, intentional and willful omissions, and misleading representations and warranties made my A.H. Robins Company, Inc. concerning the safety and adequacy of Reglan/MCP, and all liabilities stemming therefrom.

140.    Wyeth manufactured, marketed and distributed Reglan/MCP through its Wyeth-Ayerst Laboratories Division in St. Davids, Pennsylvania and through its ownership of "ESI."[2]

141.    Wyeth knew that it must fully disclose material safety data and information regarding a new drug's chemistry, proposed manufacturing process, proposed model labeling,

---

[1] Upon information and belief, Wyeth is the holder of multiple NDAs for Reglan, metoclopramide and metoclopramide HCl.
[2] Upon information and belief, ESI was a former subsidiary which merged into Wyeth on or about December 15, 1998.

including warnings about risks and side effects, and test results involving animal studies, clinical studies, and the drug's bioavailability.

142.   Wyeth knew that the data and information would be relied upon by the medical community, physicians, Plaintiff and other foreseeable users of Reglan/MCP once the NDA was approved and Wyeth was listed as the Reference Listed Drug Company for the drug.

143.   Wyeth intentionally and negligently disseminated misleading information to physicians across the county, through the PDR, about the risks of long-term ingestion of Reglan/MCP and the increased risk of side effects including depression and extrapyramidal side effects, specifically tardive dyskinesia and dystonia.

144.   Defendant Schwarz purchased from Wyeth the rights and liabilities associated with Reglan/MCP, the terms of which, upon information and belief, obligated Schwarz to be responsible for claims related to the ingestion or use of Reglan/MCP.

145.   Defendant Schwarz entered into an indemnification agreement with Wyeth over the purchase of the innovator, Wyeth's, Reglan, which included disclosure of clinical studies on Reglan/MCP that were not publicly available.[3]

146.   Because Defendant Schwarz acquired Defendant Wyeth's Reglan/MCP assets and liabilities while Wyeth was involved in ongoing litigation regarding Reglan/MCP, and nevertheless agreed to indemnify Wyeth against all claims related to the ingestion of the drug, Schwarz knew or should have known that the NDA label for Reglan/MCP (Wyeth's label) misrepresented the safety of the drug, withheld warnings of the known side effects of the drug, and knew or should have known of the safety issues surrounding it.

---

[3] Plaintiff does not have information regarding the maximum amount of liability under the defendants' indemnification agreement.

147.   Under the FDA schema, Wyeth was and is the Reference Listed Drug Company (RLD), under a specific NDA, for Reglan/MCP.

148.   Under the FDA schema, Defendant Schwarz was and remains the RLD and/or NDA Holder for Reglan/MCP.

149.   At all times material hereto, Defendants Wyeth and Schwarz, as the NDA Holder and/or RLD companies, were aware of the serious side effects caused by Reglan/MCP including, but not limited to, central nervous system disorders, depression with suicidal ideation, akathisia, tardive dyskinesia, tardive dystonia, visual disturbances and interference with drug metabolism.

150.   Defendants Wyeth and Schwarz have a duty to ensure their warnings to the medical community are accurate and adequate, to conduct safety surveillance of adverse events for the drug, and to report *any* data related to the safety and/or accuracy of the warnings and information disseminated regarding the drug.

151.   Defendants Wyeth and Schwarz represented that Reglan/MCP was safe for use to treat gastritis, gastroesophageal reflux and gastroparesis knowing that the drug was not safe for that purpose, that there were safer alternatives, and that it was dangerous to the health and body of users, including Plaintiff Cook.

152.   Defendants Wyeth and Schwarz represented that Reglan/MCP caused minimal side effects knowing that the drug caused central nervous system side effects and extrapyramidal symptoms, among other side effects, far more frequently than represented.

153.   Defendants Wyeth and Schwarz had actual knowledge, through their own studies and studies by independent investigators, that doctors frequently prescribed Reglan/MCP for long-term use that was not safe for patients.

154.   Defendants Wyeth and Schwarz had actual knowledge, through their own studies and studies by independent investigators that nearly one-third of all patients who used Reglan/MCP received it on doctor's prescriptions for 12 months or longer, rather than 12 weeks or less.

155.   Defendants Wyeth and Schwarz also had actual knowledge, through research by independent investigators, that the risk of depression, tardive dyskinesia, tardive dystonia, akathisia and other extrapyramidal side effects of Reglan/MCP in patients who receive the drug for 12 weeks or longer are approximately 100 times greater than disclosed in package inserts and the PDR.

156.   Defendants Wyeth and Schwarz knew, or through the exercise of reasonable care should have known, that many patients who use Reglan/MCP are not able to effectively metabolize it and that as a foreseeable consequence of their inability to effectively metabolize, those patients have a greater risk of developing serious and permanent injuries.

157.   Defendants Wyeth and Schwarz had actual knowledge of facts which demonstrated that representations in the Reglan/MCP package insert, the PDR and literature they distributed to physicians were false and misleading.

158.   Defendants Wyeth and Schwarz failed to correct their monograph and/or disclose that knowledge to the medical community, Plaintiff, and other foreseeable users.

159.   It is the public policy of the United States and of this state, as reflected in the Hatch-Waxman Act, to encourage the availability of cheaper, generic drug products that are therapeutically equivalent to name brand products and to encourage the substitution, as appropriate, of such generic products for name brand products in patients' medical therapy.

160.    Defendants Wyeth and Schwarz, as prescription drug manufacturers and/or distributors, knew that so-called "drug product selection laws," enacted in every state, including this state, authorize or require a prescription for a drug identified by product brand name or by generic name to be filled, subject to certain limitations, with a generic drug product that is therapeutically equivalent to the name brand drug product.

161.    Defendants Wyeth and Schwarz had actual and/or constructive knowledge that generic drug manufacturers customarily copy verbatim the package insert for the name brand prescription drug product, which gives the impression to prescribers and consumers that the information contained in the package inserts accompanying their own generic prescription drugs is accurate and not misleading.

162.    Defendants Wyeth and Schwarz had actual and/or constructive knowledge that the generic drug manufacturers also typically rely upon the marketing efforts of the name brand manufacturer to generate sales of their own products.

163.    Defendants Wyeth and Schwarz had actual and/or constructive knowledge that physicians commonly consult the information disseminated by the name brand manufacturer, in the PDR or otherwise, and rely upon that information in their decisions concerning the prescribing of those products for their patients.

164.    Defendants Wyeth and Schwarz had actual and/or constructive knowledge that physicians would rely upon the information disseminated to them by the name brand manufacturer, regardless of whether the prescriptions might be filled with either the name brand product, Reglan, or generic Metoclopramide, and that many patients, in accordance with those prescriptions, would be likely to ingest generic Metoclopramide.

165.    Defendants, Pliva and Teva submitted Abbreviated New Drug Applications ("ANDA") to the FDA, based on representations made by the RLD companies, requesting permission to manufacture, market, and distribute generic Metoclopramide and/or Metoclopramide HCl.

166.    Under the ANDA process, the Code of Federal Regulations required Pliva and Teva to submit labels for Metoclopramide and/or Metoclopramide HCl initially identical in all material aspects to the reference listed drug label.

167.    Under the Code of Federal Regulations, the generic MCP manufacturers had a duty to ensure its Reglan/MCP warnings to the medical community were accurate and adequate, to conduct post market safety surveillance, to review all adverse drug event information, and to report any information bearing on the risk and/or prevalence of side effects caused by Reglan/MCP.

168.    Under the Code of Federal Regulations, if MCP manufacturers discovers information in the course of the fulfillment of its duties as outlined above, it must report that information to the medical community, Plaintiff and other foreseeable users of Reglan/MCP to ensure that its warnings are continually accurate and adequate.

169.    Defendants failed to investigate the accuracy of its Metoclopramide and/or Metoclopramide HCl drug labels.

170.    Defendants failed to review the medical and scientific literature for the Metoclopramide drug and/or Metoclopramide HCl drug.

171.    Defendants failed to fulfill their duties of pharmacovigilance before and after approval of the ANDA for the Metoclopramide drug and/or Metoclopramide HCl drug.

172.    Defendants relied upon the name brand manufacturer and the referenced listed drug companies to review the aforementioned medical and scientific literature for Reglan/MCP.

173.    Under the FDA schema, if the FDA approves a label change as requested by an ANDA holder, the NDA holder (also referred to as the RLD Company) must also amend its label.

174.    Defendants failed to communicate the true and accurate risks and/or prevalence of severe neurological side effects resulting from the ingestion of drugs containing Metoclopramide and/or Metoclopramide HCl.

175.    All Defendants to this action who have manufactured, marketed and distributed generic Reglan/MCP, upon information and belief, have failed to communicate the true and accurate risks and/or prevalence of severe neurological side effects from the ingestion of drugs containing Metoclopramide and/or Metoclopramide HCl in the same manner as generic Defendants Pliva and Teva.

176.    Defendant FDB had actual and/or constructive knowledge that pharmacists, physicians including Plaintiff's treating physicians, and consumers, such as Plaintiff, would rely upon the information disseminated to them by FDB in its patient education monograph for Reglan/MCP, and that many patients, including Plaintiff, in accordance with their prescription and patient education monograph, would be likely to ingest Reglan/MCP.

177.    Defendants disseminated to physicians, through package inserts, the publication of the PDR, patient information monographs, and otherwise, information concerning the properties and effects of Reglan/MCP, with the intention that physicians would rely upon that information in their decisions concerning the prescription of drug therapy for their patients.

178.    Defendants knew, or should have known through the exercise of reasonable care, that the package insert for Reglan/MCP substantially understated the prevalence of acute and long-term side effects on ingesting the drug.

179.    Defendants failed to use reasonable care to modify the package insert to adequately warn physicians about the true risks of both short-term and long-term use, even after several injured patients filed lawsuits alleging inadequate warnings and produced competent expert testimony supporting their allegations.

180.    Defendants owed a duty in all of their several undertakings, including the dissemination of information concerning Reglan/MCP, to exercise reasonable care to ensure that they did not create unreasonable risks of personal injury to others.

181.    Reglan/MCP was widely advertised by Defendants as a safe and effective treatment of diabetic gastroparesis, GERD and other gastrointestinal disorders.

182.    Defendants failed to conduct and report post market safety surveillance on Reglan/MCP.

183.    Defendants failed to review all adverse drug event information[4] and to report any information bearing upon the adequacy and accuracy of their warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Reglan/MCP.

184.    Defendants failed to monitor all relevant scientific literature related to Reglan/MCP.

185.    Defendants failed to conduct appropriate safety and efficacy studies in a timely manner to support its marketed risks and benefits.

---

[4] Defendants are required to review all adverse drug experience information obtained or otherwise received . . . from any source…including information derived from post marketing clinical investigations, post marketing epidemiological/ surveillance studies, reports from the scientific literature, and unpublished scientific reports.  21 C.F.R. § 317.80(b).

186.   Defendants failed to disclose material safety information regarding the serious and permanent side effects caused by taking Reglan/MCP for long periods of time.

187.   Defendants failed to report data, regardless of the degree of significance, regarding the adequacy and/or accuracy of their warnings, efficacy or safety of Reglan/MCP.

188.   Defendants knowingly concealed from physicians material facts bearing on the interpretation of package insert disclosures, that exposure to Reglan/MCP can lead to tardive dyskinesia, tardive dystonia and other extrapyramidal side effects, that the risk is "believed" to increase with duration of therapy and total cumulative dose, and that therapy for longer than 12 weeks "cannot be recommended."

189.   Defendants concealed the fact that earlier false information disseminated by A.H. Robins Company and/or Wyeth representing long-term Reglan/MCP therapy to be reasonably safe, was unscientific and false.

190.   Defendants concealed the fact that Reglan/MCP is a neuroleptic agent and dopamine antagonist, which can be expected to lead to depression, tardive dyskinesia, tardive dystonia and other extrapyramidal side effects with approximately the same high frequency, particularly in longer term use, as other neuroleptic drugs and that epidemiological studies have consistently confirmed this expectation.

191.   Defendants also concealed the fact that the treatment of chronic or intermittent gastroesophageal reflux and/or diabetic gastroparesis and/or other gastric disorders with Reglan/MCP for longer than 12 weeks is unlikely to be reasonably safe.

192.   Some or all of the Defendants, as a result of their participation as defendants in previous litigation concerning Reglan/MCP products received clear notice of Wyeth's

suppression of important safety information concerning Reglan/MCP, yet despite this notice chose to ignore the information and join consciously in the suppression.

193.   As a result of all of the Defendants wrongful conduct, Mr. Cook suffered and continues to suffer significant, permanent injuries.

## COUNT I.

## LIABILITY FOR FAILURE TO WARN AND/OR INADEQUATE WARNINGS

## PLAINTIFF V. CORPORATE DEFENDANTS

194.   Plaintiff incorporates by reference all of the above paragraphs.

195.   This case involves the Defendants' failure to warn physicians and/or the medical community of information that was within the Defendants' extensive knowledge or possession, that Reglan/MCP, when taken for long periods of time (i.e. for longer than 12 weeks) could and did cause serious, permanent and debilitating side effects, including depression, abnormal movements of jaw and mouth, tardive dyskinesia, tardive dystonia, and akathisia.

196.   The Defendants, as pharmaceutical manufacturers and patient education monograph authors, are in the business of formulating, manufacturing, testing, packaging, providing warnings for marketing, distributing and/or selling Reglan/MCP in its brand name and/or generic form.

197.   Defendants widely advertised that Reglan/MCP was a safe and effective treatment for diabetic gastroparesis, gastroesophageal reflux disease (GERD) and other gastrointestinal disorders.

198.   Defendants jointly and severally marketed, manufactured and distributed Reglan/MCP and encouraged the long term prescribing and use of this drug, and misrepresented the effectiveness of this drug and concealed the drug's dangerous side effects.

199.    The Defendants developed, manufactured, tested, packaged, marketed, sold and/or distributed Reglan/MCP to the general public despite knowledge that the design, manufacturing and/or side effect defects associated with this drug unreasonably caused, and/or had the potential to unreasonably cause, injuries with the foreseeable and/or prescribed use of the drug.

200.    The Defendants, as pharmaceutical manufacturers, had prior knowledge and information within their possession that indicated Reglan/MCP was defective and unreasonably dangerous, including the fact that it was capable of causing severe physical, mental and emotional injuries to those who ingested the drug.

201.    Reglan/MCP as manufactured was defective and not reasonably safe as designed because of the foreseeable and undisclosed risks associated with the long-term ingestion of the drug and which were not made known to the prescribing physician and ultimately thereby to the user/consumer, in this case the Plaintiff, Kevin V. Cook. Accordingly, the Plaintiff's physicians prescribed Reglan/MCP to Plaintiff in a dissimilar manner than the physicians would have, had the physicians been reasonably notified by the Defendants of the significant risks of, *inter alia*, depression, abnormal movements of jaw and mouth, tardive dyskinesia, tardive dystonia and akathisia.

202.    Defendants knew or should have known that Reglan/MCP was defective and unreasonably dangerous and that it was expected to and did reach consumers, including the Plaintiff, without substantial change in the drug.

203.    Defendants, through their unique knowledge and expertise of Reglan/MCP and through advertising statements, promotional materials and other communications, falsely represented to physicians, the medical community and thereby ultimately consumers, including

Plaintiff, that Reglan/MCP was safe for its intended use and was free from design, safety and/or manufacturing defects.

204.    Defendants knew through testing, adverse event reporting and/or other means that Reglan/MCP created a high risk of bodily injury and serious harm to those who ingested the drug as prescribed over extended time periods (over 12 weeks duration).

205.    The Defendants, as pharmaceutical manufacturers, failed to provide timely and adequate post-marketing warnings or instructions regarding the risks of injury from Reglan/MCP associated with long term use as commonly prescribed, while knowing or with constructive notice that the design, manufacturing, and safety defects associated with the drug had an unreasonable risk of causing severe neurological disorders, such as depression, abnormal movements of jaw and mouth, tardive dyskinesia, tardive dystonia and akathisia.

206.    Despite such knowledge, the Defendants, knowingly and deliberately, failed to warn the medical community, and thereby ultimately the Plaintiff, of the extreme risk of physical injury occasioned by the defects of Reglan/MCP.

207.    Defendants have a duty to ensure their warnings to the medical community are accurate and adequate, to conduct safety surveillance of adverse events for the drug, and to report any data related to the safety and/or accuracy of the warnings and information disseminated regarding the drug.

208.    Defendants had a duty to exercise the care of an expert in all aspects of the formulation, manufacture, compounding, testing, inspection, packaging, labeling, distribution, marketing and sale of Reglan/MCP to ensure the safety of the drug and to ensure that the medical community, and thereby ultimately the consuming public, obtained accurate information and instructions for the safe use or non-use of said drug.

209.    Defendants failed to discharge this duty by distributing a defective drug into the stream of commerce without warning or notice of the foreseeable and unreasonably dangerous side effects. Defendants' breach of their duties exposed the Plaintiff to a high risk of bodily injury and caused Plaintiff to suffer serious harm.

210.    Reglan/MCP was defective and unreasonably dangerous to foreseeable users and patients, including the Plaintiff who ingested said drug in a prescribed and reasonably foreseeable manner.

211.    Defendants breached their duties, and proximately caused, through a defective product, severe damage to Plaintiff.

212.    The defect(s) directly and proximately caused Plaintiff severe and permanent injuries, in that it or they directly and in natural and continuous sequence produced and contributed substantially to Plaintiff's injuries.

213.    As a direct and proximate result of the acts and omissions of the Defendants, Plaintiff ingested Reglan/MCP as prescribed and for periods in excess of 12 weeks duration which unbeknownst to Plaintiff and, upon information and belief, unbeknownst to his physicians was causally related to and substantially contributed to Plaintiff's  development of continuous involuntary movements of his mouth and jaw, hand and joint pain, which led to him being diagnosed with the permanent neurological disorder known as depression and anxiety.

214.    As a direct and proximate result of the acts and omissions of  Defendants' conduct, Plaintiff suffered injury, harm and economic loss, including medical bills, medical expenses, and permanent and substantial physical disability.

215. As a direct and proximate result of the acts and omissions of the Defendants, Plaintiff suffered among other things extreme emotional distress, anguish, physical and mental suffering.

216. As a direct and proximate result of the acts and omissions of the Defendants, Plaintiff has experienced extreme embarrassment, shame, anguish, depression, anxiety, and a decreased inability to be involved in daily activities.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, for compensatory damages and for punitive damages all in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT II.

## NEGLIGENCE

## PLAINTIFF V. CORPORATE DEFENDANTS

217. Plaintiff incorporates by reference all of the above paragraphs.

218. Defendants developed and branded the pharmaceutical drug Reglan/MCP.

219. Defendant Wyeth is the successor in interest to A.H. Robins Company, Inc., which first obtained approval by the FDA to distribute Metoclopramide under the brand name "Reglan" under the FDA's New Drug Application (NDA)[5] schema in 1983.

220. Defendant Wyeth manufactured, marketed and distributed Reglan/ Metoclopramide and/or Metoclopramide HCL, through its various divisions and/or subsidiaries,

---

[5] Upon information and belief, Wyeth is the holder of multiple NDAs for Reglan, metoclopramide and metoclopramide HCL.

including Wyeth-Ayerst Laboratories Division in St. Davids, Pennsylvania and through its ownership of "ESI". [6]

221.     At all times material hereto, Defendant Wyeth was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, and/or selling, either directly or indirectly, through third parties, as successor in interest or other related entities the drug Reglan/MCP.

222.     On or before the date when Plaintiff was first prescribed Reglan/MCP Defendants knew that it must fully disclose material safety data and information regarding a new drug's chemistry, proposed manufacturing process, proposed model labeling, including warnings about risks and side effects, and test results involving animal studies, clinical studies and the drug's bioavailability.

223.     On or before the date when Plaintiff was first prescribed Reglan/MCP, Defendants knew that the data and information provided by would be relied upon by the medical community, physicians, Plaintiff and other foreseeable users of Reglan/MCP once the NDA was approved and Wyeth was listed as the Reference Listed Drug Company ("RLD") for the drug.

224.     On or before the date when Plaintiff was first prescribed Reglan/MCP, Defendants as the NDA Holder and/or RLD companies were aware of the serious side effects caused by the long-term ingestion of Reglan/MCP including but not limited to central nervous system disorders, depression with suicidal ideation, akathisia, tardive dyskinesia, tardive dystonia, visual disturbances and interference with drug metabolism.

225.     On or before the date when Plaintiff was first prescribed Reglan/MCP, Defendants had actual knowledge, through their own studies and studies by independent

---

[6] Upon information and belief, ESI was a former subsidiary which merged into Wyeth on or about December 15, 1998.

investigators, that doctors frequently prescribed Reglan/MCP for long-term use that was not safe for patients.

226.   On or before the date when Plaintiff was first prescribed Reglan/MCP, Defendants, through its own studies and studies by independent investigators, had knowledge that nearly one-third of all patients who used Reglan/MCP received it on doctor's prescriptions for 12 months or longer, rather than 12 weeks or less.

227.   On or before the date when Plaintiff was first prescribed Reglan/MCP, Defendants, had actual knowledge, through research by independent investigators, that the risk of depression, tardive dyskinesia, tardive dystonia and other extrapyramidal side effects of Reglan/MCP in patients who receive the drug for 12 weeks or longer is approximately 100 times greater than disclosed in package inserts and the PDR.

228.   On or before the date when Plaintiff was first prescribed Reglan/MCP, Defendants knew, or through the exercise of reasonable care should have known, that many patients who use Reglan/MCP are not able to effectively metabolize it and that as a foreseeable consequence of their inability to effectively metabolize, those patients have a greater risk of developing serious and permanent injuries.

229.   Despite information as to the significant risks and side effects associated with long-term (greater than 12 weeks) Reglan/MCP ingestion Defendants failed to correct their monograph and/or disclose that knowledge to the medical community, Plaintiff and other foreseeable users. As a direct result, Plaintiff's prescribing physicians prescribed Reglan/MCP in a manner that they would not have, had the physicians known of the significant risks of, *inter alia*, depression, abnormal movements of jaw and mouth, tardive dyskinesia, tardive dystonia and akathisia.

230.    Defendants knew that generic drug manufacturers customarily copy verbatim the package insert for the name brand prescription drug product, and that this would give the impression that the information contained in the package inserts accompanying their own generic prescription drugs is accurate and not misleading.

231.    Defendants knew that the generic drug manufacturers also typically rely upon the marketing efforts of the name brand manufacturer to generate sales of their own products.

232.    Defendants knew that physicians commonly consult the information disseminated by the name brand manufacturer, in the PDR or otherwise, and rely upon that information in their decisions concerning the prescribing of those products for their patients.

233.    Defendants knew that physicians would rely upon the information disseminated to them by the name brand manufacturer, regardless of whether the prescriptions might be filled with either the name brand product, Reglan, or generic Reglan/MCP, and that many patients, in accordance with those prescriptions, would be likely to ingest generic Reglan/MCP.

234.    Defendants were aware that under the FDA schema, if the FDA approves a label change as requested by an ANDA holder, the NDA holder (also referred to as the RLD Company) must also amend its label.

235.    Defendants knew that the package insert for Reglan/MCP substantially understated the prevalence of acute and long-term side effects of ingesting the drug.

236.    Defendants failed to use reasonable care to modify the package insert to adequately warn physicians about the true risks of both short-term and long-term use, even after several injured patients filed lawsuits alleging inadequate warnings and produced competent expert testimony supporting their allegations.

237.   Defendants owed a duty in all of its several undertakings, including the dissemination of information concerning Reglan/MCP, to exercise reasonable care to ensure that it did not create unreasonable risks of personal injury to others.

238.   Defendants failed to review all adverse drug event information[7] and to report any information bearing upon the adequacy and accuracy of its warnings about risks, efficacy, or safety, including the risks and/or prevalence of side effects caused by Reglan/MCP.

239.   Defendants failed to disclose material safety information regarding the serious and permanent side effects caused by taking Reglan/MCP for periods of time in excess of 12 weeks duration.

240.   Defendants, were negligent and breached its duties owed to the Plaintiff as a user and consumer with respect to the manufacture and sale of Reglan/MCP, as set forth otherwise herein and for reasons including, but not limited to the following:

   a)   Failing to reasonably design, manufacture, test, inspect, market, sell and/or distribute Reglan/MCP so as to avoid the aforementioned risks to individuals;

   b)   Failing to reasonably accompany the drug with adequate warnings, instructions and updates regarding the adverse and permanent side effects,, particularly with foreseeable long term use, despite Defendant Wyeth's knowledge of the defects and risks associated with Reglan/MCP ingestion;

   c)   Failing to reasonably and accurately represent to prescribing physicians and ultimately thereby users and consumers, that the drug can cause central nervous system side effects and significant and permanent extra pyramidal symptoms, particularly with foreseeable long term use;

   d)   Failing to conduct adequate pre-clinical and clinical testing and post marketing surveillance to determine the safety of Reglan/MCP, and failing to monitor all relevant scientific literature related to Reglan/MCP;

---

[7] Defendant Wyeth is required to review all adverse drug experience information obtained or otherwise received...from any source...including derived from post marketing clinical investigations, post marketing epidemiological/ surveillance studies, reports from the scientific literature, and unpublished scientific reports. 21 C.F.R § 317.80(b).

e)   Failing to adequately and reasonably inform the medical community that Reglan/MCP was unreasonably dangerous for long-term use, despite having knowledge, through its own studies and studies by independent investigators, that physicians frequently prescribed Reglan/MCP for long-term use;

f)   Failing to reasonably and sufficiently disclose information in package inserts for Reglan/MCP or through the Physician's Desk Reference (PDR), the risks of depression, tardive dyskinesia, tardive dystonia and other extrapyramidal side effects of Reglan/MCP, including, but not limited to the increased risks for patients who receive the drug for 12 weeks or longer;

f)   Failing to reasonably and promptly correct and/or amend the package inserts, PDR monographs, and literature regarding the risks of long term ingestion of Reglan/MCP, once the side effects became actually or constructively known; with the knowledge that this information would be disseminated to physicians who would rely upon that information in their decisions concerning the prescription of drug therapy for their patients;

g)   Failing to reasonably and properly conduct and report adequate post-marking surveillance and testing to determine the safety of the product, particularly with foreseeable long-term use, despite Defendant Wyeth's knowledge of the defects and risks associated with Reglan/MCP ingestion;

h)   Failing to reasonably and adequately warn that the long term use of Reglan/MCP may result in side effects such as depression with suicidal ideation, akathisia, akinesia, tardive dyskinesia, tardive dystonia, visual disturbances, etc., and that these side effects were permanent in nature;

i)   Willfully and deliberately failing to adequately disclose all actually and/or constructively known risks regarding Reglan/MCP and in doing so, acting with a conscious disregard of Plaintiff's safety and/or welfare, and others similarly situated.

241.   The negligence described above directly and proximately caused Plaintiff severe and permanent injuries, in that it directly and in natural and continuous sequence produced and contributed substantially thereto, including, but not limited to the fact that Plaintiff's prescribing physicians prescribed Reglan/MCP in a manner that they would not have, had the physicians known of the significant risks of, *inter alia*, depression, tardive dyskinesia, tardive dystonia and

akathisia. And as a result Plaintiff developed joint and hand pain, abnormal movements of his jaw and mouth and a permanent neurological disorder known as depression.

WHEREFORE, Plaintiff demands judgment against all Defendants, jointly and severally, for compensatory damages and for punitive damages all in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT III.

## BREACH OF WARRANTY

## PLAINTIFF V. CORPORATE DEFENDANTS

242.    Plaintiff incorporates by reference all of the above paragraphs.

243.    Defendant Wyeth's predecessor-in-interest, A.H. Robins Company, Inc. expressly warranted to physicians that Reglan/MCP was and is safe for long term use.

244.    As successor-in-interest to A.H. Robins Company, Inc., Defendant Wyeth is legally responsible for the conduct, fraudulent and negligent acts, intentional and willful omissions and misleading representations and warranties made by A.H. Robins Company, Inc. concerning the safety and adequacy of Reglan/MCP and all liabilities stemming there from.

245.    Through its promotional statements and product literature Defendant Wyeth expressly warranted to the medical community and thereby ultimately the user/consumers, including Plaintiff, that Reglan/MCP was safe for use in treating gastrointestinal disorders over an extended period of time (i.e. over 12 weeks), despite Defendant Wyeth's knowledge to the contrary.

246.    Defendants knew or should have known that its warranties regarding safety for long-term use would be relied upon by the medical community which included ordinary,

reasonable and prudent physicians who would share that information with others in the medical community and that eventually prescribing physicians and the public, including Plaintiff, would come to rely and did rely upon Defendants' express warranties about Reglan/MCP's safety for long-term use.

247.    Defendants' express warranties about the safety of Reglan/MCP for long-term use were false and intentionally misleading.

248.    Despite knowledge to the contrary, Defendants continued to promote, sell and market the safety of Reglan/MCP, while having knowledge of the design, manufacturing, safety defects and risk that it posed to the user/consumer of developing severe neurological side effects such as depression, abnormal movements of jaw and mouth, tardive dyskinesia, tardive dystonia and akathisia with prolonged use of the drug.

249.    Defendants, through their marketing, promoting, selling and distribution of Reglan/MCP, represented that their drug product was of merchantable quality and safe and fit for its intended use of treating gastrointestinal symptoms such as gastroesophageal reflux and gastroparesis. At the same time Defendants continued to conceal and fail to warn of the risks and side effects of neurological disorders such as depression, tardive dyskinesia, tardive dystonia and akathisia which were associated with long-term use of Reglan/MCP and continued to impliedly warrant the medical soundness of the drug product to the medical community and thereby ultimately the general public and user/consumer, including Plaintiff.

250.    Plaintiff and his prescribing physicians reasonably relied on the presumption that the Defendants would provide notice, disclosure or warnings of any serious risks associated with Reglan/MCP's merchantability, quality, safety and fitness for its intended use. As a direct result, Plaintiff's physicians prescribed Reglan/MCP in a manner that they would not have, had the

physicians known of the significant risks of, *inter alia*, depression, abnormal movements of jaw and mouth, tardive dyskinesia, tardive dystonia and akathisia.

251.    Contrary to such implied warranties, Reglan/MCP was not of merchantable quality or safe or fit for its intended use, because the drugs were and are unreasonably dangerous and unfit for the ordinary, intended and foreseeable use due to the adverse side effects and inadequate warnings.

252.    As a direct and proximate result of the Defendants' breach of warranty, Plaintiff ingested Reglan/MCP as prescribed and which unbeknownst to him was causally related to and substantially contributed to his development of joint and hand pain, abnormal movements of his jaw and mouth and a permanent neurological disorder known as depression.

WHEREFORE, Plaintiff demands judgment against all Defendants, jointly and severally, for compensatory damages and for punitive damages all in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.


## COUNT IV.

## MISREPRESENTATION AND FRAUD

## PLAINTIFF V. CORPORATE DEFENDANTS

253.    Plaintiff incorporates by reference all of the above paragraphs.

254.    Defendants intentionally and negligently disseminated misleading information to physicians across the country, through the PDR, about the risks of long-term ingestion of Reglan/MCP and the increased risk of side effects including depression and extrapyramidal side effects, specifically tardive dyskinesia, tardive dystonia and akathisia.

255.   Defendants misrepresented the soundness and reliability of Reglan/MCP to physicians and the medical community and thereby ultimately the general public and user/consumer, including Plaintiff, through promotional and marketing campaigns. They misrepresented that the drug was safe and effective when used as prescribed, when in fact, it was dangerous to the health of patients. Defendants continued these misrepresentations for an extended period of time, without disclosing material information that was available to them.

256.   Defendants concealed the design, manufacturing and safety defects from the public by withholding information pertaining to the design, manufacturing, safety defects and risks of severe and permanent neurological side effects related to the ingestion and long-term use of Reglan/MCP, while knowingly presenting inaccurate safety and risk information to the medical community and thereby ultimately the general public and users/consumers, including Plaintiff.

257.   Defendants knew of the risks that Reglan/Metoclopramide presented to users/ consumers when they unknowingly ingested the prescribed drug product for periods in excess of 12 weeks duration, and failed to inform the prescribing physicians of that risk.

258.   Defendants failed to exercise reasonable care and competence in obtaining and/or communicating information regarding the safe or unsafe use of Reglan/MCP and otherwise failed to exercise reasonable care in transmitting information to the medical community and thereby ultimately to the general public, including Plaintiff.

259.   Defendants made these representations concerning Reglan/MCP in the course of its business as designer, manufacturer and distributor of the drug.

260.   Such representations were made by the Defendants with the intent to defraud and/or deceive the medical community and thereby ultimately the user/consumer of Reglan/MCP

and with the knowledge and intent to induce reliance upon these representations and use of said drug product.

261.    Defendants knowingly concealed from physicians material facts bearing on the interpretation of package insert disclosures that exposure to Reglan/MCP can lead to depression, tardive dyskinesia and other extrapyramidal side effects, that the risk is "believed" to increase with duration of therapy and total cumulative dose, and that therapy for longer than 12 weeks "cannot be recommended".

262.    Defendants concealed the fact that earlier false information disseminated by A.H. Robins Company and/or Wyeth representing long-term Reglan/MCP therapy to be reasonably safe, was unscientific and false.

263.    Defendants concealed the fact that Reglan/MCP is a neuroleptic agent and dopamine antagonist, which can be expected to lead to depression, tardive dyskinesia, tardive dystonia and other extrapyramidal side effects with approximately the same high frequency, particularly in longer term use, as other neuroleptic drugs and that epidemiological studies have consistently confirmed this expectation.

264.    Defendants also concealed the fact that the treatment of chronic or intermittent gastroesophageal reflux and/or diabetic gastroparesis and/or other gastric disorders with Reglan/MCP for longer than 12 weeks is unlikely to be reasonably safe and that there are safer alternatives.

265.    As a direct and proximate result of the acts and omissions of the Defendant Wyeth, Plaintiff ingested Reglan/MCP as prescribed and which unbeknownst to him was causally related to and substantially contributed to his development of joint and hand pain,

abnormal movements of his jaw and mouth and a permanent neurological disorder known as depression.

WHEREFORE, Plaintiff demands judgment against all Defendants, jointly and severally, for compensatory damages and for punitive damages all in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT V.

## NEGLIGENCE

### PLAINTIFF V. SCHWARZ

266.    Plaintiff incorporates by reference all of the above paragraphs.

267.    Based upon information and belief Defendant Schwarz purchased from Defendant Wyeth the rights and liabilities associated with Reglan/MCP and the terms of which obligated Schwarz to accept responsibility for claims related to the ingestion or use of Reglan/MCP.

268.    Based upon information and belief Defendant Schwarz entered into an indemnification agreement with Wyeth over the purchase of the innovator, Wyeth's, Reglan, which included disclosure of clinical studies on Reglan/MCP that were not publicly available.

269.    It is further believed that Defendant Schwarz acquired Defendant Wyeth's Reglan/MCP assets and liabilities while Wyeth was involved in ongoing litigation regarding Reglan/MCP and as such agreed to indemnify Wyeth against all claims related to the ingestion of the drug. Schwarz knew or should have known that the NDA label for Reglan/MCP (Wyeth's label) misrepresented the safety of the drug, withheld warnings of the known side effects of the drug and knew or should have known of the safety issues involved.

270.    Under the FDA schema, Defendant Schwarz was and remains the RLD and/or NDA holder for Reglan/MCP.

271.    At all times material hereto, Defendant Schwarz, as the NDA Holder and/or RLD company, was aware of the serious side effects caused by Reglan/MCP including, but not limited to, central nervous system disorders, depression which suicidal ideation, abnormal movements of jaw and mouth, akathesia, tardive dyskinesia, tardive dystonia, visual disturbances and interference with drug metabolism.

272.    Defendant Schwarz represented that Reglan/MCP was safe for use to treat gastritis, gastroesophageal reflux and gastroparesis knowing that the drug was not safe for that purpose and was dangerous to the health and body of the user of said drug, which in this case was the Plaintiff.

273.    Defendant Schwarz represented that Reglan/MCP caused minimal side effects knowing that the drug caused, among other side effects, central nervous system side effects and extrapyramidal symptoms far more frequently than represented.

274.    Plaintiff's physicians prescribed Reglan/MCP in a manner that they would not have, had the physicians known of the significant risks of, *inter alia*, depression, abnormal movements of jaw and mouth, tardive dyskinesia, tardive dystonia and akathisia.

275.    Defendant, Schwarz knew or should have known, through its own studies and studies by independent investigators, that doctors frequently prescribed Reglan/MCP for long-term use and that it was not safe for patients.

276.    Defendant Schwarz knew or should have known, through its own studies and studies by independent investigators, that nearly one-third of all patients who used Reglan/MCP

were prescribed Reglan/MCP for twelve (12) months or longer, rather than twelve (12) weeks or less.

277.    Defendant Schwarz knew or should have known, through its own studies and research by independent investigators, that the risk of depression, tardive dyskinesia and other extrapyramidal side effects of Reglan/MCP in patients who receive the drug for twelve (12) weeks or longer is approximately 100 times greater than disclosed in package inserts and the PDR.

278.    Defendant Schwartz knew or should have known through its expertise or through the exercise of reasonable care that many patients who use Reglan/MCP are not able to effectively metabolize it and that as a foreseeable consequence of their inability to effectively metabolize, those patients have a greater risk of developing serious and permanent injuries.

279.    Thereby, Defendant Schwarz was negligent and breached duties owed to Plaintiff as user and consumer with respect to its manufacture and sale of Reglan/MCP, as set forth otherwise herein and for reasons including, but not limited to the following:

a)    Failing to reasonably design, manufacture, test, inspect, market, sell and/or distribute Reglan/MCP so as to avoid the aforementioned risks to individuals;

b)    Failing to reasonably accompany the drug with adequate warnings, instructions and updates regarding the adverse and permanent side effects , particularly with foreseeable long term use, despite Defendant Schwarz's knowledge of the defects and risks associated with Reglan/MCP ingestion;

c)    Failing to reasonably and accurately represent to physicians and ultimately thereby users and consumers, that the drug can cause central nervous system side effects and significant and permanent extrapyramidal symptoms, particularly with foreseeable long term use;

d)    Failing to conduct adequate and reasonable testing on the risks and side effects associated with long term ingestion of Reglan/MCP and conduct post-marketing surveillance to determine the safety of Reglan/MCP, and failing to monitor all relevant scientific literature related to Reglan/MCP;

e) Failing to adequately and reasonably inform the medical community that Reglan/MCP was unreasonably dangerous for long-term use, despite having knowledge, through its own studies and studies by independent investigators, that physicians frequently prescribed Reglan/MCP for long-term use;

f) Failing to reasonably and sufficiently disclose information in package inserts for Reglan/MCP or through the Physician's Desk Reference (PDR), the risks of depression, tardive dyskinesia, tardive dystonia and other extrapyramidal side effects of Reglan/MCP, including, but not limited to the increased risks for patients who receive the drug for 12 weeks or longer;

g) Failing to reasonably and promptly correct and/or amend the package inserts, PDR monographs, and literature regarding the risks of long term ingestion of Reglan/MCP, once the side effects became actually or constructively known; with the knowledge that this information would be disseminated to physicians who would rely upon that information in their decisions concerning the prescription of drug therapy for their patients;

h) Failing to reasonably and properly conduct and report adequate post-marking surveillance and testing to determine the safety of the product, particularly with foreseeable long-term use, despite Defendant Schwarz's knowledge of the defects and risks associated with Reglan/MCP ingestion;

i) Failing to reasonably and adequately warn that the long term use of Reglan/MCP may result in side effects such as depression with suicidal ideation, akathisia, akinesia, tardive dyskinesia, tardive dystonia, visual disturbances, etc., and that these side effects were permanent in nature;

j) Willfully and deliberately failing to adequately disclose all actual and/or constructively known risks regarding Reglan/MCP and in doing so, acting with a conscious disregard of Plaintiff's safety and/or welfare, and others similarly situated.

280. The negligence described above directly and proximately caused Plaintiff's severe and permanent injuries, in that it directly and in natural and continuous sequence produced, contributed substantially or enhanced the Plaintiff's injuries, harm including permanent and substantial physical disabilities, including but not limited to the fact that Plaintiff's physicians prescribed Reglan/MCP in a manner that they would not have, had the physicians known of the

significant risks of, *inter alia*, depression, abnormal movements of jaw and mouth, tardive dyskinesia, tardive dystonia and akathisia.

281. Defendant Schwarz, individually and in accepting and purchasing Wyeth's liability, intentionally, recklessly, and/or negligently disseminated misleading information to physicians and patients across the country, including the Plaintiff, through but not limited to its drug representatives, drug advertisements and marketing, drug package inserts and/or its published material in the PDR about the risks of long term ingestion of Reglan/MCP and/or of the increased risk or lack thereof of side effects including depression, and extrapyramidal side effects, specifically, abnormal movements of jaw and mouth, tardive dyskinesia and tardive dystonia.

282. Defendant Schwarz individually and in accepting and purchasing Defendant Wyeth's liability, is accordingly liable for the intentional, reckless, and/or negligent misrepresentations and omissions that were made willfully, wantonly, recklessly, and/or negligently by Defendant Wyeth or on their own behalf to Plaintiff to induce purchase of their drug.

283. Defendant Schwarz individually and in accepting and purchasing Defendant Wyeth's liability is liable for Wyeth's as well as its own intentional, reckless, and/or negligent conduct. Plaintiff came to rely upon the safety and soundness of its drug Reglan/MCP and so failed to appreciate or have knowledge of the risk associated with long-term ingestion of said drug.

284. Defendant Schwarz individually and because it accepted and purchased Wyeth's liability, is liable for Wyeth's conduct as well as its own conduct for the intentional, reckless, and/or negligent omission, concealment and failure to warn of the serious health risks, which

caused Plaintiff to suffer injury, harm and economic loss as alleged herein, including permanent and substantial physical disability as well as emotional distress.

285.    Defendant Schwarz breached its duties, and through its acts of negligence, proximately caused severe and permanent damage to Plaintiff.

286.    As a direct and proximate result of the acts and omissions of the Defendant Schwarz, Plaintiff ingested Reglan/MCP as prescribed for periods in excess of 12 weeks duration and which unbeknownst to Plaintiff was causally related to and substantially contributed to Plaintiff's development of joint and hand pain, abnormal movements of his jaw and mouth and a permanent neurological disorder known as depression.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages and for punitive damages all in excess of  $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.


## COUNT VI.

## BREACH OF WARRANTY

## PLAINTIFF V. SCHWARZ

287.    Plaintiff incorporates by reference all of the above paragraphs.

288.     Through its promotional statements and product literature Defendant Schwarz expressly warranted to the medical community and thereby ultimately user/consumers, including Plaintiff, that Reglan/MCP was safe to use for the treatment of certain gastrointestinal disorders over an extended period of time (i.e. over 12 weeks), despite Defendant Schwarz's knowledge to the contrary.

289.   Defendant Schwarz knew or should have known that its warranties regarding safety for long-term use would be relied upon by the medical community which included ordinary, reasonable and prudent physicians who would share that information with others in the medical community and that eventually prescribing physicians and the public, including Plaintiff, would come to rely and did rely upon Defendant Schwarz's express warranties about Reglan/MCP's safety for long-term use.

290.   Defendant Schwarz's warranties about the safety of Reglan/MCP for long-term use were false and intentionally misleading.

291.   Despite knowledge to the contrary Defendant Schwarz continued to promote, sell and market the safety of Reglan/MCP, while having knowledge of the design, manufacturing, safety defects and risk that it posed to the user/consumer of developing severe neurological side effects such as depression, tardive dyskinesia, tardive dystonia and akathisia with prolonged use of the drug.

292.   Through its marketing, promoting, selling and distribution of Reglan/MCP, Defendant Schwarz represented that its drug product was of merchantable quality and safe and fit for its intended use of treating gastrointestinal symptoms such as gastroesophageal reflux and gastroparesis. At the same time Defendant Schwarz continued to conceal and fail to warn of the risks and side effects of neurological disorders such as depression, tardive dyskinesia, tardive dystonia and akathisia which were associated with long-term use of Reglan/MCP and continued to impliedly warrant the medical soundness of the drug product to the medical community and thereby ultimately the general public, including Plaintiff.

293.   Plaintiff and his prescribing physicians reasonably relied on the presumption that the Defendant Schwarz would provide notice, disclosure or warnings of any serious risks

associated with Reglan/MCP's merchantability, quality, safety and fitness for its intended use. As a direct result, Plaintiff's prescribing physicians prescribed Reglan/MCP in a manner that they would not have, had the physicians known of the significant risks of, *inter alia*, depression, tardive dyskinesia, tardive dystonia and akathisia.

294. Contrary to such implied warranties, Reglan/MCP was not of merchantable quality or safe or fit for its intended use, because the drugs were and are unreasonably dangerous and unfit for ordinary, intended and foreseeable use due to the adverse side effects and inadequate warnings.

295. As a direct and proximate result of the Defendant Schwarz's breach of warranty, Plaintiff ingested Reglan/MCP as prescribed and which unbeknownst to Plaintiff was causally related to and substantially contributed to Plaintiff's development of joint and hand pain, abnormal movements of his jaw and mouth and a permanent neurological disorder known as depression.

WHEREFORE, Plaintiff demands judgment against all Defendants, jointly and severally, for compensatory damages and for punitive damages all in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT VII.

## MISREPRESENTATION AND FRAUD

## PLAINTIFF V. SCHWARZ

296. Plaintiff incorporates by reference all of the above paragraphs.

297. Defendant Schwarz intentionally and negligently disseminated misleading information to physicians across the country, through the PDR, about the risks of long-term

ingestion of Reglan/MCP and the increased risk of side effects including depression and extrapyramidal side effects, specifically tardive dyskinesia, tardive dystonia and akathisia.

298.    Defendant Schwarz misrepresented the safety of Reglan/MCP to the medical community and thereby ultimately the general public through promotional and marketing campaigns. It misrepresented that the drug was safe and effective when used as prescribed, when it fact, it was dangerous to the health of patients. Defendant Schwarz continued these misrepresentations for an extended period of time, without disclosing material information that was available to them.

299.    Defendant Schwarz concealed the design, manufacturing and safety defects from the public by withholding information pertaining to the design, manufacturing, safety defects and risks of severe and permanent neurological side effects related to the ingestion and long-term use of Reglan/MCP, while knowingly presenting inaccurate safety and risk information to the medical community and thereby ultimately the general public and users/consumers, including Plaintiff.

300.    Defendant Schwarz knew or should have known of the risks that Reglan/MCP presented to users/consumers when they unknowingly ingested the drug product as prescribed.

301.    Defendant Schwarz failed to exercise reasonable care and competence in obtaining and/or communicating information regarding the safe use of Reglan/MCP and otherwise failed to exercise reasonable care in transmitting information to the medical community and thereby ultimately to the general public and, user/consumers, including Plaintiff. As a direct result, Plaintiff's prescribing physicians prescribed Reglan/MCP in a manner that they would not have, had the physicians known of the significant risks of, *inter alia*, abnormal movements of jaw and mouth, depression, tardive dyskinesia, tardive dystonia and akathisia.

302.     Defendant Schwarz made these representations concerning Reglan/MCP in the course of its business as designer, manufacturer and distributor of Reglan/MCP.

303.     Such representations were made by the Defendant Schwarz with the intent to defraud and/or deceive the medical community and thereby ultimately the user/consumer of Reglan/MCP and with the knowledge and intent to induce reliance upon these representations and use of Reglan/MCP.

304.     As a direct and proximate result of the acts and omissions of the Defendant Schwarz, Plaintiff ingested Reglan/MCP as prescribed and which unbeknownst to Plaintiff was causally related to and substantially contributed to Plaintiff's development of joint and hand pain, abnormal movements of his jaw and mouth and a permanent neurological disorder known as depression and anxiety.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages and for punitive damages all in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT VIII.

## NEGLIGENCE

## PLAINTIFF V. TEVA

305.     Plaintiff incorporates by reference all of the above paragraphs.

306.     Defendant Teva specializes in the development, manufacture and sale of generic pharmaceuticals, including Reglan/MCP.

307.    Defendant Teva has facilities in Pennsylvania and during all times material hereto regularly conducted business and supplied pharmaceutical medications, including but not limited to generic Reglan/MCP, to pharmacies in Pennsylvania and Colorado.

308.    By way of information and belief Plaintiff ingested Reglan/MCP that was manufactured and sold by Defendant Teva during the time period in question.

309.    Based upon information and belief, Defendant Teva submitted an Abbreviated New Drug Application (ANDA) to the FDA, based on representations made by the RLD companies, requesting permission to manufacture market and distribute generic Reglan/MCP.

310.    Under the ANDA process, the Code of Federal Regulations required Defendant Teva to submit labels for Reglan/MCP initially identical in all material aspects to the reference listed drug label.

311.    Under the Code of Federal Regulations, Teva had a duty to ensure its Reglan/MCP warnings to the medical community were accurate and adequate, and to conduct post market safety surveillance, to review all adverse drug event information and to report any information bearing on the risk and/or prevalence of side effects caused by Reglan/MCP.

312.    Under the Code of Federal Regulations if a generic drug manufacturer such as Teva discovers subsequent information in the course of the fulfillment of their duties as outlined above, they are obligated to report that information to the medical community, and thereby Plaintiff's physicians, so that the Plaintiff and other foreseeable users of Reglan/MCP are apprised of warnings and updates that are accurate and adequate.

313.    Despite these requirements, Defendant Teva failed to investigate the accuracy of its generic bioequivalent Metoclopramide and/or Metoclopramide HCL drug label. As a direct result, Plaintiff's prescribing physicians prescribed Reglan/MCP in a manner that they would not

have, had the physicians known of the significant risks of, *inter alia*, depression, abnormal movements of jaw and mouth, tardive dyskinesia, tardive dystonia and akathisia.

314.   Based upon information and belief, Defendant Teva unreasonably failed to review the medical literature for its Reglan/MCP and instead relied upon the name brand manufacturer and the RLD to review the aforementioned medical literature and thus failed to communicate the true and accurate risks and/or prevalence of severe neurological side effects resulting from the ingestion of Reglan/MCP. As a result Plaintiff came to rely upon the safety and soundness of Reglan/MCP, and so failed to appreciate or have knowledge of the risk associated with long-term ingestion of the drug.

315.   Defendant Teva was negligent and breached duties owed to the Plaintiff as user and consumer with respect to its manufacture and sale of Reglan/MCP, as set forth otherwise herein and for reasons including, but not limited to the following:

   a)   Failing to reasonably design, manufacture, test, inspect, market, sell and/or distribute Reglan/MCP so as to avoid the aforementioned risks to individuals;

   b)   Failing to reasonably accompany the drug with adequate warnings, instructions and updates regarding the adverse and permanent side effects, particularly with foreseeable long term use, despite Defendant Teva's knowledge of the defects and risks associated with Reglan/MCP ingestion;

   c)   Failing to reasonably and accurately represent to prescribing physicians and ultimately thereby users and consumers, that the drug can cause central nervous system side effects and significant and permanent extrapyramidal symptoms, particularly with foreseeable long term use;

   d)   Failing to conduct adequate post marketing surveillance to determine the safety of Reglan/MCP, and failing to monitor all relevant scientific literature related to Reglan/MCP;

   e)   Failing to adequately and reasonably inform the medical community that Reglan/MCP was unreasonably dangerous for long-term use, despite having knowledge, through its own studies and/or studies by independent

investigators, that physicians frequently prescribed Reglan/MCP for long-term use;

f)     Failing to reasonably and sufficiently disclose information in package inserts for Reglan/MCP or through the PDR, the risks of depression, tardive dyskinesia, tardive dystonia and other extrapyramidal side effects of Reglan/MCP, including, but not limited to the increased risks for patients who receive the drug for 12 weeks or longer;

g)     Failing to reasonably and promptly correct and/or amend the package inserts, PDR monographs, and literature regarding the risks of long term ingestion of Reglan/MCP once the side effects became actually or constructively known; with the knowledge that this information would be disseminated to physicians who would rely upon that information in their decisions concerning the prescription of drug therapy for their patients;

h)     Failing to reasonably and properly conduct and report adequate post-marking surveillance and testing to determine the safety of the product, particularly with foreseeable long-term use, despite Defendant Teva's knowledge of the defects and risks associated with Reglan/MCP ingestion;

i)     Failing to reasonably and adequately warn that the long term use of Reglan/MCP may result in side effects such as depression with suicidal ideation, akathisia, akinesia, tardive dyskinesia, tardive dystonia, visual disturbances, etc., and that these side effects were permanent in nature;

j)     Willfully and deliberately failing to adequately disclose all actually and/or constructively known risks regarding Reglan/MCP and in doing so, acting with a conscious disregard of Plaintiff's safety and/or welfare, and others similarly situated.

316.    The negligence described above directly and proximately caused Plaintiff severe and permanent injuries, in that it directly and in natural and continuous sequence produced and contributed substantially thereto, including but not limited to the fact that Plaintiff's prescribing physicians prescribed Reglan/MCP in a manner that they would not have, had the physicians known of the significant risks of, *inter alia*, depression, abnormal movements of jaw and mouth, tardive dyskinesia, tardive dystonia and akathisia.

317.    Defendant Teva breached its duties, and proximately caused through a defective product and/or through its acts of negligence, severe and permanent damage to Plaintiff.

318.    Defendant Teva is therefore liable for intentional, reckless, and/or negligent omission, concealment and failure to warn of the design and manufacturing defects which caused Plaintiff to suffer injury, harm and economic loss, including medical bills, medical expenses, and permanent and substantial physical disability.

319.    As a direct and proximate result of the acts and omissions of Defendant Teva, Plaintiff ingested Reglan/MCP as prescribed and which unbeknownst to Plaintiff was causally related to and substantially contributed to Plaintiff's development of joint and hand pain, abnormal movements of his jaw and mouth and a permanent neurological disorder known as depression and anxiety.

WHEREFORE, Plaintiff demands judgment against all Defendants, jointly and severally, for compensatory damages and for punitive damages all in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT IX.

## BREACH OF WARRANTY

## PLAINTIFF V. TEVA

320.    Plaintiff incorporates by reference all of the above paragraphs.

321.    Through its promotional statements and product literature Defendant Teva expressly warranted to the medical community and thereby ultimately the user/consumer, Plaintiff that Reglan/MCP was safe and capable of treating certain gastrointestional disorders over an extended period of time (i.e. over 12 weeks), despite Defendant Teva's knowledge to the contrary.

322.     Defendant Teva knew or should have known that its warranties regarding safety for long-term use would be relied upon by the medical community which included ordinary, reasonable and prudent physicians who would share that information with others in the medical community and that eventually prescribing physicians and the public, including Plaintiff, would come to rely and did rely upon Defendant Teva's express warranties about Reglan/MCP's safety for long-term use.

323.     Defendant Teva's express warranties about the safety of Reglan/MCP for long-term use were false and intentionally misleading.

324.     Despite knowledge to the contrary, Defendant Teva continued to promote, sell and market the safety of Reglan/MCP, while having knowledge of the design, manufacturing, and safety defects and risk that it posed to the user/consumer of developing severe neurological side effects such as depression, tardive dyskinesia and dystonia with prolonged use of the drug.

325.     Through its marketing, promoting, selling and distribution of Reglan/MCP, Defendant Teva represented that its drug product was of merchantable quality and safe and fit for its intended use of treating gastrointestinal symptoms such as gastroesophageal reflux and gastroparesis. At the same time Defendant Teva continued to conceal and fail to warn of the risks and side effects of neurological disorders such as depression, tardive dyskinesia, tardive dystonia and akathisia which were associated with long-term use of Reglan/MCP and continued to impliedly warrant the medical soundness of the drug product to the medical community and thereby general public. As a direct result, Plaintiff's prescribed Reglan/MCP in a manner that they would not have, had the physicians known of the significant risks of, *inter alia*, depression, abnormal movements of jaw and mouth, tardive dyskinesia, tardive dystonia and akathisia.

326.    Plaintiff, Mr. Cook, and his prescribing physicians reasonably relied on the presumption that the Defendant Teva would provide notice, disclosure or warnings of any serious risks associated with Reglan/MCP's merchantability, quality, safety and fitness for its intended use.

327.    Contrary to such implied warranties, Reglan/MCP was not of merchantable quality or safe or fit for its intended use, because the drugs were and are unreasonably dangerous and unfit for the ordinary, intended and foreseeable use due to the adverse side effects and inadequate warnings of serious health risks.

328.    As a direct and proximate result of the Defendant Teva's breach of warranty, Plaintiff ingested Reglan/MCP as prescribed and which unbeknownst to Plaintiff was causally related to and substantially contributed to Plaintiff's development of joint and hand pain, abnormal movements of his jaw and mouth and a permanent neurological disorder known as depression.

WHEREFORE, Plaintiff demands judgment against all Defendants, jointly and severally, for compensatory damages and for punitive damages all in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT X.

## MISREPRESENTATION AND FRAUD

## PLAINTIFF V. TEVA

329.    Plaintiff incorporates by reference all of the above paragraphs.

330.   Defendant Teva intentionally and negligently disseminated misleading information to physicians across the country, through the PDR, about the risks of long-term ingestion of Reglan/MCP and the increased risk of side effects including depression, and extrapyramidal side effects, specifically tardive dyskinesia and dystonia.

331.   Defendant Teva misrepresented the soundness and reliability of Reglan/MCP to physicians and the medical community and thereby ultimately the general public through promotional and marketing campaigns. It misrepresented that the drug was safe and effective when used as prescribed, when it fact, it was dangerous to the health of patients. Defendant Teva continued these misrepresentations for an extended period of time, without disclosing material information that was available to it. As a direct result, Plaintiff's physicians prescribed Reglan/MCP in a manner that they would not have, had the physician(s) known of the significant risks of, *inter alia*, depression, abnormal movements of jaw and mouth, tardive dyskinesia, tardive dystonia and akathisia.

332.   Defendant Teva concealed the design, manufacturing and safety defects from the public by withholding information pertaining to the design, manufacturing, and safety defects and risks of severe and permanent neurological side effects related to the ingestion and long-term use of Reglan/MCP, while knowingly presenting inaccurate safety and risk information to the medical community and thereby ultimately the users and consumers, including Plaintiff.

333.   Defendant Teva knew of the risks that Reglan/MCP presented to users/consumers when they unknowingly ingested the drug product as prescribed for periods exceeding 12 weeks in duration.

334.   Defendant Teva failed to exercise reasonable care and competence in obtaining and/or communicating information regarding the safe use of Reglan/MCP and otherwise failed to

exercise reasonable care in transmitting information to the medical community and thereby ultimately to users and consumers, including Plaintiff.

335.     Defendant Teva made these representations concerning Reglan/MCP in the course of its business as designer, manufacturer and distributor of the drug.

336.     Such representations were made by the Defendant Teva with the intent to defraud and/or deceive the medical community and thereby ultimately the user/consumer of Reglan/MCP and with the knowledge and intent to induce reliance upon these representations and use of said drug product.

337.     As a direct and proximate result of the acts and omissions of Defendant Teva, Plaintiff ingested Reglan/MCP as prescribed and which unbeknownst to Plaintiff was causally related to and substantially contributed to Plaintiff's development of joint and hand pain, abnormal movements of his jaw and mouth and a permanent neurological disorder known as depression.

WHEREFORE, Plaintiff demands judgment against all Defendants, jointly and severally, for compensatory damages and for punitive damages all in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT XI.

## NEGLIGENCE

## PLAINTIFF V. PLIVA

338.     Plaintiff incorporates by reference all of the above paragraphs.

339.   Defendant Pliva is a generic pharmaceutical manufacturer who is in the business of researching, manufacturing and distributing generic pharmaceuticals, including Reglan/MCP.

340.   By way of information and belief Plaintiff ingested Reglan/MCP that was manufactured and sold by the Defendant during the time period in question.

341.   Under the ANDA process, the Code of Federal Regulations required Defendant Pliva to submit labels for Reglan/MCP initially identical in all material aspects to the reference listed drug label.

342.   Under the Code of Federal Regulations, Pliva had a duty to ensure its Reglan/MCP warnings to the medical community were accurate and adequate, and to conduct post market safety surveillance, to review all adverse drug event information and to report any information bearing on the risk and/or prevalence of side effects caused by Reglan/MCP.

343.   Under the Code of Federal Regulations if a generic drug manufacturer such as Pliva discovers subsequent information in the course of the fulfillment of their duties as outlined above, it is obligated to report that information to the medical community, and thereby Plaintiff's physician, so that the Plaintiff and other foreseeable users of Reglan/MCP are apprised of warnings and updates that are accurate and adequate.

344.   Despite these requirements, Defendant Pliva failed to investigate the accuracy of its generic bioequivalent Metoclopramide and/or Metoclopramide HCL drug label. As a direct result, Plaintiff's physicians prescribed Reglan/MCP in a manner that they would not have, had the physicians known of the significant risks of, *inter alia*, depression, abnormal movements of jaw and mouth, tardive dyskinesia, tardive dystonia and akathisia.

345.   Based upon information and belief Defendant Pliva unreasonably failed to review the medical literature for its Reglan/MCP and instead relied upon the name brand manufacturer

and the RLD to review the aforementioned medical literature and thus failed to communicate the true and accurate risks and/or prevalence of severe neurological side effects resulting from the ingestion of Reglan/MCP. As a result Plaintiff came to rely upon the safety and soundness of said drug, and so failed to appreciate or have knowledge of the risk associated with long-term ingestion of the drug.

346.    Defendant Pliva was negligent and breached duties owed to Plaintiff as user and consumer with respect to its manufacture and sale of Reglan/MCP, as set forth otherwise herein and for reasons including, but not limited to the following:

a)    Failing to reasonably design, manufacture, test, inspect, market, sell and/or distribute Reglan/MCP so as to avoid the aforementioned risks to individuals;

b)    Failing to reasonably accompany the drug with adequate warnings, instructions and updates regarding the adverse and permanent side effects, particularly with foreseeable long term use, despite Defendant Pliva's knowledge of the defects and risks associated with Reglan/MCP ingestion;

c)    Failing to reasonably and accurately represent to the prescribing physicians and ultimately thereby users and consumers, including Plaintiff, that the drug can cause central nervous system side effects and significant and permanent extrapyramidal symptoms, particularly with foreseeable long term use;

d)    Failing to conduct adequate pre-clinical and clinical testing and post marketing surveillance to determine the safety of Reglan/MCP, and failing to monitor all relevant scientific literature related to Reglan/MCP;

e)    Failing to adequately and reasonably inform the medical community that Reglan/MCP was unreasonably dangerous for long-term use, despite having knowledge, through their own studies and studies by independent investigators, that physicians frequently prescribed Reglan/MCP for long-term use;

f)    Failing to reasonably and sufficiently disclose information in package inserts for Reglan/MCP or through the Physician's Desk Reference (PDR), the risks of depression, tardive dyskinesia, tardive dystonia and other extrapyramidal side effects of Reglan/MCP, including, but not limited to

the increased risks for patients who receive the drug for 12 weeks or longer;

g) Failing to reasonably and promptly correct and/or amend the package inserts, PDR monographs, and literature regarding the risks of long term ingestion of Reglan/MCP, once the side effects became actually or constructively known; with the knowledge that this information would be disseminated to physicians who would rely upon that information in their decisions concerning the prescription of drug therapy for their patients;

h) Failing to reasonably and properly conduct and report adequate post-marking surveillance and testing to determine the safety of the product, particularly with foreseeable long-term use, despite Defendant Pliva's knowledge of the defects and risks associated with Reglan/MCP ingestion;

i) Failing to reasonably and adequately warn that the long term use of Reglan/MCP may result in side effects such as depression with suicidal ideation, akathisia, akinesia, tardive dyskinesia, tardive dystonia, visual disturbances, etc., and that these side effects were permanent in nature;

j) Willfully and deliberately failing to adequately disclose all actually and/or constructively known risks regarding Reglan/MCP and in doing so, acting with a conscious disregard of Plaintiff's safety and/or welfare, and others similarly situated.

347. The negligence described above directly and proximately caused Plaintiff severe and permanent injuries, in that it directly and in natural and continuous sequence produced and contributed substantially thereto, including but not limited to the fact that Plaintiff's physicians prescribed Reglan/MCP in a manner that they would not have, had the physicians known of the significant risks of, *inter alia*, depression, abnormal movements of jaw and mouth, tardive dyskinesia, tardive dystonia and akathisia.

348. Defendant Pliva breached its duties, and proximately caused through a defective product and/or through its acts of negligence, severe and permanent damage to Plaintiff.

349. Defendant Pliva is therefore liable for intentional, reckless, and/or negligent omission, concealment and failure to warn of the design and manufacturing defects which caused

Plaintiff to suffer injury, harm and economic loss, including medical bills, medical expenses, permanent and substantial physical disability.

350.    As a direct and proximate result of the acts and omissions of Defendant Pliva, Plaintiff ingested Reglan/MCP as prescribed and which unbeknownst to Plaintiff was causally related to and substantially contributed to Plaintiff's development of joint and hand pain, abnormal movements of his jaw and mouth and a permanent neurological disorder known as depression.

WHEREFORE, Plaintiff demands judgment against all Defendants, jointly and severally, for compensatory damages and for punitive damages all in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT XII.

## BREACH OF WARRANTY

## PLAINTIFF V. PLIVA

351.    Plaintiff incorporate by reference all of the above paragraphs.

352.    Through its promotional statements and product literature Defendant Pliva expressly warranted to the medical community and thereby ultimately users and consumers, including Plaintiff, that Reglan/MCP was safe and capable of treating certain gastrointestinal disorders over an extended period of time (i.e. over 12 weeks), despite Defendant Pliva's knowledge to the contrary. As a direct result, Plaintiff's physicians prescribed Reglan/MCP in a manner that they would not have, had the physicians known of the significant risks of, *inter alia*, depression, abnormal movements of jaw and mouth, tardive dyskinesia, tardive dystonia and akathisia.

353.     Defendant Pliva knew or should have known that its warranties regarding safety for long-term use would be relied upon by the medical community which included ordinary, reasonable and prudent physicians who would share that information with others in the medical community and that eventually prescribing physicians and the public, including Plaintiff, would come to rely and did rely upon Defendant Pliva's express warranties about Reglan/MCP's safety for long-term use.

354.     Defendant Pliva's warranties about the safety of Reglan/MCP for long-term use were false and intentionally misleading.

355.     Despite knowledge to the contrary Defendant Pliva continued to promote, sell and market the safety of Reglan/MCP, while having knowledge of the design, manufacturing, safety defects and risk that it posed to the user/consumer of developing severe neurological side effects such as depression, tardive dyskinesia, tardive dystonia and akathisia with prolonged use of the drug.

356.     Through its marketing, promoting, selling and distribution of Reglan/MCP, Defendant Pliva represented that its drug product was of merchantable quality and safe and fit for its intended use of treating gastrointestinal symptoms such as gastroesophageal reflux and gastroparesis. At the same time Defendant Pliva continued to conceal and fail to warn of the risks and side effects of neurological disorders such as depression, abnormal movements of jaw and mouth, tardive dyskinesia, tardive dystonia and akathisia which were associated with long-term use of Reglan/MCP and continued to impliedly warrant the medical soundness of the drug product to the medical community and thereby general public.

357.    Plaintiff and his prescribing physicians reasonably relied on the presumption that Defendant Pliva would provide notice, disclosure or warnings of any serious risks associated with Reglan/MCP's merchantability, quality, safety and fitness for its intended use.

358.    Contrary to such implied warranties, Reglan/MCP was not of merchantable quality or safe or fit for its intended use, because the drug was and is unreasonably dangerous and unfit for the ordinary, intended and foreseeable use due to the adverse side effects and inadequate warnings.

359.    As a direct and proximate result of the Defendant Pliva's breach of warranty, Plaintiff ingested Reglan/MCP as prescribed and which unbeknownst to Plaintiff was causally related to and substantially contributed to Plaintiff's development of hand and joint pain, abnormal movements of jaw and mouth and a permanent neurological disorder known as depression.

360.    As a direct and proximate result of the acts and omissions of the Defendant Pliva, Plaintiff suffered among other things extreme emotional distress, anguish, physical and mental suffering, depression, anxiety, hand and joint pain and continuous involuntary movements of his mouth and jaw rendering Plaintiff physically and permanently disabled.

WHEREFORE, Plaintiff demands judgment against all Defendants, jointly and severally, for compensatory damages and for punitive damages all in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT XIII.

## MISREPRESENTATION AND FRAUD

## PLAINTIFF V. PLIVA

361.    Plaintiff incorporates by reference all of the above paragraphs.

362.    Defendant Pliva intentionally and negligently disseminated misleading information to physicians across the country, through the PDR, about the risks of long-term ingestion of Reglan/MCP and the increased risk of side effects including depression, and extrapyramidal side effects, specifically tardive dyskinesia. As a direct result, Plaintiff's physicians prescribed Reglan/MCP in a manner that they would not have, had the physicians known of the significant risks of, *inter alia*, depression, abnormal movements of jaw and mouth, tardive dyskinesia, tardive dystonia and akathisia.

363.    Defendant Pliva misrepresented the soundness and reliability of Reglan/MCP to physicians and the medical community and thereby ultimately the general public, including Plaintiff, through promotional and marketing campaigns. It misrepresented that the drug was safe and effective when used as prescribed, when it fact, it was dangerous to the health of patients. Defendant Pliva continued these misrepresentations for an extended period of time, without disclosing material information that was available to them.

364.    Defendant Pliva concealed the design, manufacturing and safety defects from the public by withholding information pertaining to the design, manufacturing, safety defects and risks of severe and permanent neurological side effects related to the ingestion and long-term use of Reglan/MCP, while knowingly presenting inaccurate safety and risk information to the medical community and thereby ultimately to users and consumers, including Plaintiff.

365.    Defendant Pliva knew or should have known of the risks that Reglan/MCP presented to users and consumers when they unknowingly ingested the drug product as prescribed.

366.   Defendant Pliva failed to exercise reasonable care and competence in obtaining and/or communicating information regarding the safe use of Reglan/MCP and otherwise failed to exercise reasonable care in transmitting information to the medical community and thereby ultimately to the general public and users and consumers, including Plaintiff.

367.   Defendant Pliva made these representations concerning Reglan/MCP in the course of its business as designer, manufacturer and distributor of the drug.

368.   Such representations were made by the Defendant Pliva with the intent to defraud and/or deceive the medical community and thereby ultimately the user/consumer of Reglan/MCP and with the knowledge and intent to induce reliance upon these representations and use of said drug product.

369.   As a direct and proximate result of the acts and omissions of the Defendant Pliva, Plaintiff ingested Reglan/MCP as prescribed and which unbeknownst to Plaintiff was causally related to and substantially contributed to Plaintiff's development of hand and joint pain, abnormal movements of jaw and mouth and a permanent neurological disorder known as depression.

370.   As a direct and proximate result of the acts and omissions of the Defendant Pliva, Plaintiff suffered among other things extreme emotional distress, anguish, physical and mental suffering, depression, anxiety, hand and joint pain and continuous involuntary movements of his mouth and jaw rendering Plaintiff physically and permanently disabled.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages and for punitive damages all in excess of the of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT XIV.

## NEGLIGENCE V. FDB

371.   Plaintiff incorporates by reference all of the above paragraphs.

372.   Upon information and belief, written Reglan/MCP drug package inserts, patient drug information forms, counseling, warnings, or literature, provided to Walgreens and Kaiser Permanente pharmacies' customers, including Plaintiff, by Walgreens, and Kaiser Permanente pharmacies, were created, written, edited, provided and made available to Walgreens and Kaiser Permanente pharmacies by FDB, pursuant to agreement, formal or informal, written or unwritten, between Walgreens and Kaiser Permanente pharmacies and FDB, or otherwise, for purposes of providing same to Walgreens and Kaiser Permanente pharmacies' customers, including Plaintiff.

373.   FDB undertook and had a duty to provide truthful, accurate, useful, appropriate and complete information and warnings in the written Reglan/MCP drug package inserts, patient drug information forms, counseling, warnings, or literature, that it created, wrote, edited, provided and made available to Walgreens and Kaiser Permanente pharmacies to be distributed to Walgreens and Kaiser Permanente pharmacies' customers, including Plaintiff.

374.   FDB recklessly, improperly, and negligently failed to provide truthful, accurate, appropriate and complete information and warnings in the written Reglan/MCP drug package inserts, patient drug information forms, counseling, warnings, or literature, that it created, wrote, edited, provided and made available to Walgreens and Kaiser Permanente pharmacies to be distributed to Walgreens and Kaiser Permanente pharmacies' customers, including Plaintiff.

WHEREFORE, Plaintiff demands judgment against all Defendants, jointly and severally, for compensatory damages and for punitive damages all in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT XV.

## PUNITIVE DAMAGES

## PLAINTIFF V. ALL DEFENDANTS

375.    Plaintiff incorporates by reference all of the above paragraphs.

376.    At all times relevant hereto, the Defendants' acts or omissions as set forth in Counts I through XIV, and as set forth herein, were done with conscious indifference and reckless disregard for the safety and well being of the users of Reglan/MCP, including Plaintiff in particular, and such conduct justifies the imposition of punitive damages against the Defendants both individually and collectively.

377.    The Manufacturing Defendants developed, manufactured, tested, packaged, marketed, sold and/or distributed Reglan/MCP to the general public, and in the case of FDB, disseminated patient education monographs with false and misleading risk information, with knowledge that the design, manufacturing and/or side effect defects associated with the drug unreasonably caused or had the potential to cause serious injuries without adequate warnings, with the foreseeable  prescribed use of the drug when used for durations exceeding 12 weeks.

378.    Based upon information and belief, Defendants had prior knowledge and information within their possession that indicated Reglan/MCP was defective and unreasonably dangerous, including the fact that it was capable of causing severe physical, mental and emotional injuries to those who ingested the drug for longer than 12 weeks and deliberately and

with conscious disregard failed to warn prescribing physicians, particularly Plaintiff's prescribing physicians, of this danger.

379.    Defendants' misrepresentations and omissions regarding the safety and side effects of Reglan/MCP, were made willfully, wantonly, recklessly and in conscious disregard of the users of Reglan/MCP, including Plaintiff.

380.    Due to Defendants' willful, wanton, reckless and outrageous conduct, Plaintiff's prescribing physicians were unreasonably deprived of any meaningful opportunity to measure the level of risk with regard to ingestion of Reglan/MCP and Plaintiff's physicians prescribed Reglan/MCP in a manner that they would not have, had they known and been reasonably informed of the dangers.

381.    Defendant Wyeth willfully, unreasonably and with conscious disregard failed to disclose material safety information regarding the serious and permanent side effects caused by ingesting Reglan/MCP for periods exceeding 12 weeks duration.

382.    The Defendants, as a result of their participation as defendants in previous litigation concerning Reglan/MCP products received clear notice of Defendant Wyeth's suppression of important safety information concerning Reglan/MCP, yet despite this notice consciously chose to ignore the information and joined consciously in the suppression of said information.

383.    The actions of Defendants, as set forth in all preceding paragraphs, constitutes willful and wanton misconduct in conscious disregard of the rights and safety of the Plaintiff and thereby warrants the imposition of punitive damages against each Defendant.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages and for punitive damages all in excess of the of $75,000.00 and such

other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

RESPECTFULLY SUBMITTED this 24th day of February, 2011.

Franklin D. Azar & Associates, P.C.

By: /s/ Tonya L. Melnichenko
Tonya L. Melnichenko, #32152
Franklin D. Azar & Associates, P.C.
14426 East Evans Ave
Aurora, CO 80014
Telephone: (303) 757-3300
FAX: (303) 759-5203
E-mail: melnichenkot@fdazar.com
Attorneys for Plaintiff Kevin V. Cook